MAR-MOL COMPANY, INC., recurrente, *v.* ADMINISTRACIÓN DE SERVICIOS GENERALES y GIRARD INTERNATIONAL, INC., recurridas.

*Número:* CE-89-621          *Resuelto:* 29 de junio de 1990

---

*Mario L. Paniagua,* de *Sweeting, González & Cestero,* abogado de la recurrente; *Jorge E. Pérez Díaz, Procurador General,* y *Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogados de la Administración de Servicios Generales; *José Francisco Chaves Caraballo,* de *Figueroa-Morales & Chaves-Caraballo,* abogado de Girard International, Inc., recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Sala Especial integrada por su Presidente el Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Alonso Alonso.

## I

El presente caso nos brinda la oportunidad de expresarnos sobre un asunto novel e importante para la sociedad puertorriqueña, a saber, los procedimientos de compra llevados a cabo por el Gobierno del Estado Libre Asociado de Puerto Rico (E.L.A.) mediante compras de mercado abierto y distintos tipos de subastas. Por primera vez interpretamos, además, la Ley de Preferencia para las Compras del Gobierno de Puerto Rico (Ley de Preferencia), Ley Núm. 103 de 24 de junio de 1977 (3 L.P.R.A. sec. 918d *et seq.*).

■ La buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa.

■ Los propósitos de la legislación que regula la realización de obras y la contratación de servicios para el Gobierno y los sistemas de subastas gubernamentales son precisamente ésos: proteger los intereses y dineros del pueblo al promover la competencia para lograr los precios más bajos posibles; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento.

Tales normas, que ratificamos hoy, han sido expuestas por este Tribunal desde hace unos veinte (20) años.

Así, en *Justiniano v. E.L.A.*, 100 D.P.R. 334, 338 (1971), señalamos:

El propósito que persiguen los estatutos de esta naturaleza que requieren la celebración de subasta es que haya competencia en las proposiciones *de manera que el Estado consiga que se realice la*

*obra al precio más bajo posible.* Además, *al requerirse que la subasta y el contrato se adjudiquen al postor más bajo, se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos.* (Énfasis suplido.)

Luego, en *Cancel v. Municipio de San Juan,* 101 D.P.R. 296, 300 (1973), reiteramos estas expresiones:

Las distintas disposiciones estatutarias regulando la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta *la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento.* (Énfasis suplido.)

Dentro de este marco conceptual y normativo examinemos los hechos del caso de autos, los cuales son esencialmente sencillos.

## II

*Los hechos*

La Administración de Servicios Generales (A.S.G.) celebró una compra de mercado abierto (Núm. 59-548 M.A.) para adqirir equipo de oficina para la Comisión Industrial. La compra fue celebrada el 29 de junio de 1989 y la recurrente Mar-Mol Company, Inc. (en adelante Mar-Mol) licitó en la misma.

Dicha compra fue declarada de emergencia por la A.S.G. porque el término para usar los fondos estaba a punto de vencer y los bienes deseados, si no eran adquiridos, podrían afectar adversamente el interés público. La utilización de los fondos vencía el 30 de junio de 1989.

La A.S.G. invitó a los licitadores debidamente registrados a la subasta.

Comparecieron siete (7) licitadores a la misma y ofrecieron el equipo de oficina a los precios siguientes:

| | |
|---|---|
| 1. Niccoli Assts | $ 116,911.00 |
| 2. Orbit International | $ 91,267.00 |
| 3. J. Saad Nazer | $ 111,340.00 |
| 4. *Girard International, Inc.* | *$ 97,074.00 (-10%)* |
| 5. *Mar-Mol Company, Inc.* | *$ 88,205.88* |

6. System de P.R., Inc.          $ 97,345.83
7. M.A. Esteves                  $ 116,971.00

La A.S.G. aplicó *al total del precio de venta ofrecido por Girard International, Inc.* el diez (10) por ciento de preferencia otorgado por la Junta de Preferencia para Compras de las Agencias del Gobierno Estatal (en adelante la Junta de Preferencia) a Girard Manufacturing, Inc., según lo dispuesto por la Ley Núm. 103, *supra*, 3 L.P.R.A. sec. 918g. Por ello, la oferta de Girard International, Inc. fue seleccionada como la más baja y beneficiosa al interés del Pueblo de Puerto Rico.

Por ser una compra de mercado abierto, la A.S.G. emitió la correspondiente orden de compra conjuntamente con la notificación sobre la adjudicación de la subasta. Inconforme con tal actuación Mar-Mol, alegando ser el licitador que hizo la oferta más baja en términos de precio, recurrió al Tribunal Superior.

El Tribunal Superior, Sala de San Juan, determinó que para que el Tribunal adquiriera jurisdicción para revisar el dictamen administrativo, la parte peticionaria tenía que haber solicitado reconsideración al organismo administrativo conforme lo dispuesto en la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante Ley de Procedimiento Administrativo Uniforme), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2165), cosa que en autos no se había hecho. No obstante lo anterior, acogió la solicitud de revisión. Luego de dos (2) días de vistas, dicho tribunal confirmó la determinación de la A.S.G. y condenó a la recurrente al pago de costas y seiscientos dólares ($600) de honorarios de abogado en favor de Girard International, Inc. así como doscientos dólares ($200) por el mismo concepto para el Estado.

Inconforme con tal determinación, Mar-Mol recurre ante nos y nos plantea los errores de derecho siguientes: (1) Que el tribunal recurrido erró al determinar que no tenía jurisdicción, y (2) que erró dicho foro al confirmar la adjudicación hecha a Girard International, Inc. así como al emitir la orden de compras a su favor.

Oportunamente concedimos término a los recurridos para que mostraran causa por la cual no debíamos revocar la sentencia del tribunal de instancia. Las partes han comparecido. Resolvemos.

## III

*El aspecto jurisdiccional*

Procede que examinemos, en primer lugar, si el foro de instancia tenía jurisdicción para entender en el caso. Resolvemos que tenía jurisdicción.

La nueva Ley de Procedimiento Administrativo Uniforme entró en vigor el 8 de febrero de 1989.[1] Dicha ley requiere que al solicitar una revisión de cualquier orden, decisión o dictamen administrativo se haya presentado una reconsideración al organismo administrativo antes de acudir al foro judicial. Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme, *supra.* Este trámite, como regla general, es de carácter jurisdiccional, por lo que el no seguirlo impide que los tribunales asuman jurisdicción apelativa.[2]

No obstante, la propia Ley de Procedimiento Administrativo Uniforme concedió a las agencias el término de un (1) año para:

b) Conformar sus reglas o reglamentos que establezcan los procedimientos formales de reglamentación y adjudicación, a tono con las disposiciones de este Capítulo. 3 L.P.R.A. sec. 2105.

---

(1) Modificamos así el esc. 1 del caso de *Luan Investment Corp. v. Román,* 125 D.P.R. 533, 546 (1990), donde indicamos que entró en vigor el 12 de febrero de 1989.

(2) Originalmente la Sec. 3.15 de la Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico (en adelante Ley de Procedimiento Administrativo Uniforme), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2165), establecía un término de treinta (30) días desde la fecha de la notificación de la resolución u orden para instar la moción de reconsideración. Mediante la Ley Núm. 42 de 5 de agosto de 1989 (3 L.P.R.A. sec. 2128), ese término fue enmendado para establecer un término de veinte (20) días en casos ordinarios y de diez (10) días para la reconsideración de los procedimientos de adjudicación de subastas.

En el caso de autos, la nueva ley estaba en vigencia al surgir la controversia. Sin embargo, el reglamento de la agencia disponía:

La Junta de Revisión no tendrá jurisdicción sobre compras en *mercado abierto*, subastas informales y compras de emergencia. (Énfasis suplido.)

■ La Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. sec. 2173,[3] dispone que el tribunal podrá relevar de tener que agotar los remedios administrativos, entre otros, "cuando sea un caso *claro de falta de jurisdicción*". (Énfasis suplido.)

Al momento de la controversia la agencia no había enmendado sus reglamentos conforme la nueva ley. El reglamento vigente disponía que la Junta de Revisión no tenía jurisdicción para revisar las compras de mercado abierto.

■ El tribunal de instancia no podía exigirle al peticionario que agotara remedios y reconsiderara ante la agencia en esos momentos, cuando el propio reglamento le negaba tal jurisdicción a la agencia.

No podemos castigar al peticionario, desestimando su causa de acción, por éste no seguir unos procedimientos inexistentes en la agencia. Este peticionario agotó todos los procedimientos disponibles en la agencia. El de reconsideración no estaba disponible y por ello existía una clara falta de jurisdicción de la agencia. 3 L.P.R.A. sec. 2173.

■ Ello no implica que el reglamento fuera nulo por contravenir la nueva ley, ya que el mismo se vislumbraba válido

---

(3) Esta disposición recoge aquellas excepciones al agotamiento de remedios reconocidas por este Tribunal en *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977); *Febres v. Feijoó*, 106 D.P.R. 676 (1978); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978); *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 428 (1983); *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763 (1983); *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987); *Ortiz v. Coop. Ahorro y Crédito*, 120 D.P.R. 253 (1987); *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988), entre otros.

hasta tanto no se extinguiera el año de gracia concedido a las agencias para conformar sus reglamentos a la nueva ley.(4)

Bajo estas particulares circunstancias, al carecer de jurisdicción el organismo administrativo por disposición reglamentaria y por vía de una excepción especial de tipo provisional que surge de la interacción de varias disposiciones de la Ley de Procedimiento Administrativo Uniforme, concluimos que el tribunal de instancia tenía jurisdicción para acoger la revisión sin que Mar-Mol tuviera que presentar la reconsideración ante el organismo administrativo.

## IV

Examinamos la naturaleza de la compra en autos y la aplicabilidad de la Ley de Preferencia a las mismas.

### A. *Las compras en mercado abierto*

■ Tanto el Reglamento sobre Adquisición como el Reglamento de Delegados de la Administración de Servicios Generales, ambos de 24 de noviembre de 1986, según enmendados y promulgados por la A.S.G., regulan lo referente a compras de mercado abierto. Se denomina "compras de mercado abierto" cualquiera de los procedimientos de adquisición mediante subasta cuando una transacción esté exenta de tramitarse mediante una subasta formal. Arts. 70 y 48 de los Reglamentos Adquisición y Delegados Compradores, respectivamente.

---

(4) Esa disposición reglamentaria chocaba con lo dispuesto en la nueva Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2165, sobre reconsideración de las determinaciones de la agencia y con lo que reiteradamente hemos sostenido sobre la facultad inherente de los organismos administrativos para revisar sus propias determinaciones adjudicativas. Véanse: *Sucn. Bravo v. Srio. de Hacienda*, 106 D.P.R. 672, 675 (1978); *Alers v. Tribunal Superior*, 83 D.P.R. 701, 705 (1961); *Martínez v. Tribunal Superior*, 83 D.P.R. 717, 721 (1961).

Sin embargo, al momento de emitir esta opinión la Administración de Servicios Generales (A.S.G.) había derogado dicho reglamento y lo sustituyó por el Reglamento de la Junta de Reconsideración de la Administración de Servicios Generales de *31 de octubre de 1989*. En este reglamento se provee el mecanismo de reconsideración de las adjudicaciones en compras de mercado abierto. En casos futuros, como el de autos, el licitador impugnador deberá agotar, como regla general, este remedio administrativo antes de acudir al foro judicial. Véanse: 3 L.P.R.A. sec. 2165; *Hernández v. Golden Tower Dev. Corp.*, 125 D.P.R. 744 (1990).

■ El Art. 70(4) del Reglamento de Adquisición, *supra*, autoriza una compra de mercado abierto como alternativa a la norma de celebrar una subasta formal en las compras gubernamentales cuando: (1) el suplidor sea la única fuente; (2) la compra se haga directamente al Gobierno de Estados Unidos de Norteamérica o a países extranjeros; (3) exista incumplimiento del contrato por parte de un suplidor, o (4) constituya una *compra de emergencia.*

■ En el caso que nos ocupa se trata de una compra de mercado abierto por haber sido declarada la subasta por la A.S.G. como una subasta de emergencia. El Art. 6(2)(11) del Reglamento de Subastas de la Administración de Servicios Generales de 24 de noviembre de 1986 (Reglamento de Subastas) define una "emergencia" como:

> . . . [S]ituación que ocasione unas necesidades públicas inesperadas e imprevistas y que requieran una acción inmediata de parte del gobierno por estar en peligro la vida, la salud o la seguridad de sus ciudadanos o por estar en peligro de suspenderse o afectarse el servicio público o la propiedad del Gobierno; *o por la vigencia de los fondos estar a punto de expirar y toda oportunidad para adquirir los bienes, obras y servicios deseados pueda perderse afectando adversamente el interés público.* (Énfasis suplido.)

En vista de tal definición, la A.S.G. determinó que en el caso de autos se trataba de una compra de emergencia por la inminencia de la expiración de la vigencia de los fondos disponibles para adquirir el equipo deseado.

■ En este caso, tratándose de una emergencia y, por consiguiente, de una compra de mercado abierto, al licitador que recibe la buena pro en la subasta la A.S.G. le emite a su favor la correspondiente orden de compra y se perfecciona el contrato de compraventa simultáneamente con la notificación de la adjudicación de la subasta.[5]

---

[5] Eso distingue este caso del de *Justiniano v. E.L.A.*, 100 D.P.R. 334 (1971). Allí se trataba de una compra en el proceso de *subasta formal.* Por ello allí determinamos que el

## B. *La Ley de Preferencia*

La Ley de Preferencia, según enmendada, fue aprobada con el propósito de vigorizar la industria manufacturera, el comercio y la agricultura nativa, de suerte que se impulsara nuestra economía. Véase Exposición de Motivos de la Ley Núm. 103, *supra*. El propósito cardinal de la misma es propiciar las compras del Gobierno para el beneficio de la industria puertorriqueña y la creación de un mayor número de empleos.[6]

La Ley de Preferencia aplica a toda compra gubernamental ya sea mediante subasta formal, informal *o de mercado abierto*. 3 L.P.R.A. sec. 918f.

En Estados Unidos de Norteamérica las leyes de preferencia son mecanismos que utilizan los estados para favorecer sus productos e impulsar sus economías al actuar como participantes en el mercado. Este tipo de legislación ha rebasado el crisol judicial ya que su efecto, aunque protector de sus productos, no constituye una reglamentación del mercado que afecte el comercio interestatal y, por lo tanto, está fuera de las prohibiciones dimanantes de la cláusula de Comercio Interestatal de la Constitución de Estados Unidos. Véanse: *Hughes v. Alexandria*

---

momento en que una agencia gubernamental queda obligada en un proceso de subasta formal es cuando se otorga el contrato y no el momento en que se adjudica la buena pro.

(6) De ahí que la Orden Ejecutiva del Gobernador del Estado Libre Asociado de Puerto Rico de 14 de agosto de 1987, publicada como el Boletín Administrativo Núm. 4978, y que sustituyó la Orden Ejecutiva de 28 de octubre de 1986, publicada como el Boletín Administrativo Núm. 4804, impone a todos los departamentos, agencias, instrumentalidades, dependencias, municipios y corporaciones públicas del Estado Libre Asociado el deber de implantar las disposiciones de la Ley de Preferencia para las Compras del Gobierno de Puerto Rico (Ley de Preferencia), Ley Núm. 103 de 24 de junio de 1977 (3 L.P.R.A. sec. 918d *et seq.*), en toda compra gubernamental. Por otro lado, la Ley Núm. 109 de 12 de julio de 1985 (3 L.P.R.A. sec. 927 *et seq.*), exige a los departamentos, agencias, instrumentalidades, municipios y corporaciones públicas que utilicen materiales de construcción manufacturados en Puerto Rico en las obras y edificios públicos que se construyan, reconstruyan, conserven o reparen con fondos públicos. Completa este esquema de regulación proteccionista la Orden Ejecutiva Núm. 4482-B de 28 de junio de 1985, la cual requiere a los componentes del Gobierno utilizar los servicios de la Autoridad de las Navieras cuando necesiten transportar marítimamente exportaciones o importaciones de productos.

*Scrap Corp.*, 426 U.S. 794 (1976); L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, págs. 430–434.

■ El organismo que administra la Ley de Preferencia es la Junta de Preferencia para Compras de las Agencias del Gobierno Estatal (Junta de Preferencia). La misma está compuesta por el Administrador de la Administración de Servicios Generales, el Administrador de la Administración de Fomento Económico y un miembro adicional relacionado con la industria y el comercio nombrado por el Gobernador del Estado Libre Asociado de Puerto Rico. 3 L.P.R.A. sec. 918g.

■ A dicha Junta de Preferencia se le autorizó a conceder diversos por cientos de preferencia a *productos* agrícolas, y a *artículos* manufacturados o ensamblados en Puerto Rico, 3 L.P.R.A. sec. 918g(c) y (e).[7]

■ La Junta de Preferencia fija el por ciento de preferencia conforme a los Arts. 3 (según enmendado) y 4 de la Ley de Preferencia, 3 L.P.R.A., secs. 918f y 918g, respectivamente; y de los inicios 4.03 y 4.04 del Reglamento de la Junta de Preferencia de 1ro de febrero de 1978. El criterio rector para conceder la preferencia es la determinación de la Junta de Preferencia de que la compra por el Gobierno de tales productos o equipos redundará en la creación o sostenimiento de fuentes de trabajo en Puerto Rico, de suerte que reduzca el desempleo y produzca un incremento en el desarrollo económico del Estado Libre Asociado. 3 L.P.R.A. sec. 918g(b).

■ El referido Art. 3 de la Ley de Preferencia, al establecer los criterios para que la Junta de Preferencia fije el por ciento de

---

[7] La Ley de Política Preferencial para las Compras del Gobierno de Puerto Rico, Ley Núm. 42 de 5 de agosto de 1989 (3 L.P.R.A. sec. 914a *et seq.*), enmendó la definición de *producto* ensamblado en Puerto Rico para disponer que serían aquellos "*productos* integrados [aquí] después de una operación que a juicio de la Junta amerite que se trate como un proceso de manufactura . . . debido a su naturaleza, complejidad, inversión técnica y número de empleos que genera en Puerto Rico".

preferencia, específicamente dispone que dicho por ciento sólo es aplicable a *productos* y *no* a la entidad que lo produce o a la oferta englobada hecha en una subasta. A esos efectos, dicho Art. 3 dispone:

(a) Toda compra de *mercadería, provisiones, suministros, materiales* y *equipo* que efectúe el Gobierno de Puerto Rico, para la cual se requiera una subasta, se regirá por las siguientes disposiciones:

(1) Si se trata de mercadería, provisiones, suministros y materiales no manufacturados, en igualdad de especificaciones, términos de entrega y otras condiciones impuestas en el pliego de subasta, se adjudicará la subasta en el siguiente orden de preferencia, y sujeta a las condiciones que más adelante se proveen al postor *cuyos productos* hayan sido *extraídos* o *producidos* en:

(a) Puerto Rico;

(b) Estados Unidos;

(c) cualquier otro país.

(2) Si se trata de *mercadería, provisiones, suministros, materiales* y *equipo* manufacturados o ensamblados, en igualdad de especificaciones, términos de entrega y otras condiciones impuestas en el pliego de subasta se adjudicará la subasta en el siguiente orden de preferencia y sujeta a las condiciones que más adelante se proveen, al postor cuyos *productos* hayan sido:

(a) Manufacturados o ensamblados en Puerto Rico con materiales extraídos, producidos o manufacturados en Puerto Rico;

(b) Manufacturados o ensamblados en Puerto Rico con materiales extraídos, producidos o manufacturados en el extranjero;

. . . . . . . .

(b) Las disposiciones de esta sección se aplicarán únicamente a las *mercaderías, provisiones, suministros, materiales* y *equipo que cualifiquen de acuerdo con lo anterior y que aparezcan en las listas* a las que se hace referencia en la sec. 918g de este título. Se le concederá la subasta al postor de los mismos, a menos que la oferta o precio de las mercaderías, provisiones, suministros, materiales y equipo *que reúnan todas las condiciones anteriores* exceda la oferta o precio más bajo de los que no cualifiquen por más del por ciento que fije la Junta en la referida lista. (Énfasis suplido.) 3 L.P.R.A. sec. 918f.

■ La Ley de Preferencia autoriza a la Junta de Preferencia a asignar por cientos de preferencias desde cinco (5) hasta un máximo de diez (10) por ciento. 3 L.P.R.A. sec. 918g(b).(8)

■ Al conceder determinado por ciento de preferencia a un producto, tal determinación es recogida en una resolución de la Junta de Preferencia. Tanto la Ley de Preferencia como su reglamento disponen la revisión de tal resolución, bien a iniciativa propia o a solicitud de parte.

El Reglamento de la Junta de Preferencia establece el procedimiento de revisión administrativa que seguirá ante la propia Junta de Preferencia una persona afectada por su decisión, incluso por suplidores competidores.

■ De no impugnarse la resolución de la Junta de Preferencia, que concede determinado por ciento de preferencia para determinado producto o productos, tal resolución puede ser utilizada en todas las subastas llevadas a cabo por el Gobierno del Estado Libre Asociado de Puerto Rico, a los fines de que se le acredite el por ciento concedido a cada producto. Ello incluye las subastas de la A.S.G. como la del caso de autos.

En el caso de autos, el peticionario no tenía que utilizar dicho procedimiento, pues no está impugnando el por ciento de preferencia otorgado por la Junta de Preferencia, sino la *aplicación* de la resolución de ésta en la subasta de la A.S.G.

V

*La aplicación de la Ley de Preferencia al caso de autos*

■ La Ley de Preferencia y su reglamento disponen con meridiana claridad que el por ciento de preferencia determinado por la Junta de Preferencia se aplica a cada producto

---

(8) La Ley Núm. 42, *supra*, aumenta el margen de preferencia que puede conceder la Junta de Preferencia para Compras de las Agencias del Gobierno Estatal (Junta de Preferencia) hasta un quince por ciento (15%) para productos de Puerto Rico y en especial para productos agrícolas y contratación de servicios no profesionales de Puerto Rico.

particular así designado por dicha junta y *no para el licitador o todos sus productos.* Dispone, además, que al evaluar una oferta en *todo procedimiento de compra gubernamental* se tomará en cuenta para cada producto particular el por ciento de preferencia concedido por la Junta de Preferencia, bien sea la compra efectuada mediante una subasta formal, subasta informal o de mercado abierto.

En autos, la A.S.G. así lo reconoció en su invitación a la compra de mercado abierto al exigirle a los licitadores cumplir con la Ley de Preferencia. Al respecto, la Cláusula 16 (Condiciones e Instrucciones Especiales) de la invitación a la compra de la A.S.G. disponía:

16. *Ley de Preferencia:* El licitador a favor de *cuyo producto* la Junta de Preferencia haya adjudicado un por ciento de preferencia deberá someter con su oferta toda la información sobre la *resolución de la Junta de Preferencia* para que pueda ser considerada en la evaluación.

Todos los licitadores que quieran acogerse a los beneficios de la Ley 103 tendrán que cumplir con los siguientes requisitos:

1. *Presentar copia de la resolución de la Junta de Preferencia* del Estado Libre Asociado donde se le concede el por ciento.

2. Presentar carta de la corporación que representa *el producto al cual se le concedió el por ciento de preferencia* autorizando al licitador a que comparezca en la subasta.

.a. Esta carta incluirá el *nombre del producto.*

b. Tendrá que especificar que esa autorización tiene que estar dirigida a esa subasta en específico, incluyendo número de la misma, fecha de la apertura y agencia que va a realizar dicha subasta.

c. Tiene que estar firmada por un representante autorizado de la compañía que *representa al* producto al cual se le concedió el por ciento de preferencia y dicha firma tiene que estar registrada en la Secretaría de la Junta de Preferencia. (Énfasis suplido.) Invitación Núm. 59–548 M.A., pág. 4.

■ La A.S.G., al evaluar las ofertas de mercado abierto, tenía que ajustarse al por ciento dispuesto en la Resolución de la Junta de Preferencia sometida por el licitador con su oferta.

■ Los departamentos, las agencias, las instrumentalidades, los municipios y las corporaciones públicas deben seguir

celosamente ese procedimiento en la aplicación de los por cientos de preferencia concedidos por la Junta de Preferencia a cada *producto* del licitador. Al hacerlo no deben aplicar indiscriminadamente el por ciento de preferencia otorgado por la Junta de Preferencia a *determinado' producto* del licitador a *todos los demás productos ofrecidos por éste que carecen de preferencia.* [9] Ello desvirtuaría el propósito y la letra clara de la ley.

El caso de autos es un claro ejemplo de cómo la *aplicación* errónea de los por cientos de preferencia otorgados por la Junta de Preferencia pueden afectar la adjudicación a determinado licitador. En el presente caso, la A.S.G. no se ajustó a lo dispuesto por la Resolución de la Junta de Preferencia.

En esta compra de mercado abierto se le aplicó el diez por ciento (10%) de preferencia a cincuenta y ocho (58) pedestales, diez y nueve (19) butacas, siete (7) banquetas (*stools*) y dos (2) lámparas que no fueron manufacturadas ni ensambladas en Puerto Rico *y que no estaban incluidas en la Resolución de la Junta de Preferencia que concedía un por ciento de preferencia a Girard International, Inc.,* resolución que se sometió con la oferta de este licitador en conformidad con la invitación a subasta hecha por la propia A.S.G.

La A.S.G., por el contrario, aplicó el por ciento máximo de preferencia (10%) concedido a Girard Manufacturing, Inc. *al total* de la oferta de Girard International, Inc.

Al así actuar, la A.S.G. concedió la buena pro de la compra a Girard International, Inc. en violación a su propia invitación a

---

[9] La Ley de Política Preferencial para las Compras del Gobierno de Puerto Rico impone semejantes deberes al establecer, en su Art. 8, que:

"Los secretarios de departamentos, jefes de agencias e instrumentalidades y los alcaldes velarán por que el personal profesional y técnico encargado de la preparación de las especificaciones de artículos a ser comprados por el Gobierno y de la adquisición de artículos y servicios no profesionales, realice su labor tomando en consideración la disponibilidad de artículos y servicios no profesionales que provean las empresas que operan en Puerto Rico y que al establecer las especificaciones, términos, condiciones e instrucciones generales de las subastas, éstos no eliminen de la licitación a dichos artículos y servicios no profesionales. *Toda compra bajo las disposiciones de esta ley estará sujeta a una supervisión estricta y seguimiento conforme a lo dispuesto en este artículo, que asegure el más fiel cumplimiento de las representaciones, términos y condiciones para la compra.*" (Énfasis suplido.) 1989 Leyes de Puerto Rico 151, 157.

subasta, a la Resolución de la Junta de Preferencia y a la ley que creó a dicha junta.

Resumiendo: El foro de instancia tenía jurisdicción para acoger el recurso de revisión de Mar-Mol, pues nos encontramos ante un caso claro de falta de jurisdicción de la agencia para reconsiderar su determinación. La Ley de Preferencia sólo dispone que se otorgue el por ciento de preferencia a los productos en particular, no a las personas o entidades dueñas de los mismos. En toda subasta o compra de mercado abierto a la cual le aplique la Ley de Preferencia, la agencia que celebre la misma deberá solicitar a los licitadores copia de la Resolución de la Junta de Preferencia mediante la cual se conceden por cientos de preferencia a determinados productos y deberá conceder dicho por ciento de preferencia a cada producto en particular, en conformidad a lo dispuesto por la Junta de Preferencia, y no en forma englobada a productos no incluidos en la resolución de dicha Junta.

Por todo lo antes expuesto, *se dictará sentencia mediante la cual se revoque la recurrida en todo aquello en que resulte incompatible con lo aquí resuelto, se eliminan las sanciones impuestas a la recurrente y se devuelve el caso al foro de instancia para ulteriores procedimientos compatibles con esta opinión, incluso la probabilidad de que el mismo sea devuelto al foro administrativo.*