# 2007 DTA 76

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL IV**

GE MEDICAL SYSTEMS
Recurrente

v.

CORPORACIÓN DEL CENTRO CARDIOVASCULAR
DE PUERTO RICO Y DEL CARIBE
Recurrida

Núm. KLRA-2007-00208

San Juan, Puerto Rico, a 25 de mayo de 2007

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente GE Medical Systems (en adelante, GE Medical) nos solicita que revisemos la determinación de la recurrida Corporación del Centro Cardiovascular de Puerto y del Caribe, (en adelante, la CCCPRC) de adquirir mediante compra en mercado abierto ciertos equipos de telemetría (*"Telemetry Transmiters"*).

Conjuntamente con su petición de revisión, la recurrente presentó una solicitud para que en auxilio de nuestra jurisdicción decretáramos la paralización en la CCCPRC de todo lo relacionado con la adquisición de los equipos objeto de la subasta. En nuestra resolución del 14 de marzo de 2007, ordenamos la paralización de todo trámite dirigido al otorgamiento del contrato para la adquisición, entrega e instalación de dichos equipos. También concedimos oportunidad a las otras partes interesadas de comparecer a exponer su posición sobre los méritos del recurso.

Examinada la petición de la recurrente, conjuntamente con las partes del expediente administrativo que ha sometido para nuestra consideración, así como las comparecencias de la CCCPRC y del licitador Medical Biotronics, Inc., estamos en posición de disponer del mismo, lo que a continuación hacemos.

I

Los antecedentes fácticos y procesales en la instancia administrativa pertinentes son en esencia los siguientes.

Con el propósito de recibir propuestas para la adquisición de equipos de telemetría, la CCCPRC emitió la invitación a la Subasta Número: SF-2005-13. Luego de ciertos trámites administrativos, la subasta fue adjudicada a favor del licitador GE Health Care.

Inconforme con dicha adjudicación, el licitador Medical Biotronics, Inc. impugnó la subasta. Así las cosas, la impugnación llegó hasta este Tribunal en el recurso KLRA2005-00945. Mediante sentencia del 27 de abril de 2006, dispusimos de dicho recurso con la siguiente sentencia.

*"Por los fundamentos expuestos, se revoca la adjudicación de la subasta impugnada y se devuelve el caso a la Junta de Subastas del Centro Cardiovascular de Puerto Rico y el Caribe quien deberá evaluar si la oferta de Medical Biotronics es responsiva y si procede adjudicarle la buena pro. Luego de ello deberá emitir una nueva determinación adjudicando la subasta de conformidad con dicho análisis. Esta nueva decisión de la Junta de Subastas deberá constar en una resolución debidamente fundamentada de manera que se pueda revisar judicialmente, de ser necesario."*

De regreso el caso a la CCCPRC, el 28 de septiembre de 2006, la Junta de Subastas emitió una resolución donde sostuvo que en cumplimiento con la sentencia de este Tribunal de Apelaciones había procedido a reevaluar todas y cada una de las ofertas sometidas por los licitadores en la subasta en cuestión.

Luego de consignar en dicha resolución los fundamentos que tenía para descalificar a todos los licitadores, la Junta concluyó que ninguna de dichas licitaciones justificaba la adjudicación de la buena pro. Por dicha

78

razón procedió al *"rechazo global de todas las ofertas"*, según dispuesto en las Secciones 23.5.8, 23.5.8.1 y 23.5.8.2 del Artículo 23 del Reglamento Núm. 4727 de la CCCPRC, ▇ pertinente a la adquisición y venta de equipos, materiales y servicios no profesionales.

Así concluido, la Junta devolvió el expediente de la subasta a la División de Compras de la CCCPRC, a los fines de revisar las especificaciones y determinar si las mismas debían ser enmendadas a partir de la disponibilidad en el mercado de equipos que se ajustaran a las mismas. También la Junta requirió de la División de Compras que determinara si procedía la celebración de una nueva subasta o si debía comprarse el equipo en mercado abierto o mediante el procedimiento extraordinario establecido en la Sección 23.5.10 del Artículo 23 del Reglamento Núm. 4727, *supra*.

El 16 de enero de 2007, el Director Ejecutivo de la CCCPRC notificó a GE Medical que habiendo evaluado su propuesta para proveer el nuevo sistema de telemetrías, la misma no había sido recomendada favorablemente. ▇

El 7 de febrero de 2001 GE Medical presentó al CCCPRC una moción solicitando lo siguiente: (1) que reconsiderara su decisión de no recomendarla favorablemente para suplir e instalar el nuevo sistema de telemetrías; (2) que se le pusiera en conocimiento de los fundamentos utilizados para no recomendarla favorablemente a esos efectos, según lo requiere la Sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. Sec. 2164; y (3) que se paralizara todo trámite relacionado con la otorgación del contrato para la adquisición de dichos equipos.

A las anteriores solicitudes de GE Medical, la CCCPRC, por conducto del Lcdo. Agustín Mangual Hernández, notificó a GE Medical su denegatoria a la reconsideración solicitada. En este escrito, la CCCPRC informó a GE Medical lo siguiente:

*"1. El día 10 de noviembre se adjudicó la subasta SF-05-13 a favor de GE Healthcare para la adquisición del sistema de telemetrías.*

*2. El 1 de diciembre se emitió el contrato 2006-000223 a nombre de GE Medical Systems y el día 5 de diciembre se emitió la Orden de Compra 2006-2041, a nombre de FEA Caribbean Export LLC, cubriendo los artículos solicitados en la referida subasta.*

*3. La orden se oficializó el 6 de diciembre y se envió a GEA Caribbean Export LLC acompañada de un comunicado del Lcdo. Humberto Monserrate, entonces Sub-Director Ejecutivo de la institución.*

*4. Medical Biotronics solicitó Revisión Judicial de la adjudicación de la subasta ante el Tribunal de Apelaciones.*

*5. El Tribunal de Apelaciones dictó sentencia el 27 de abril de 2006 y notificada el 8 de mayo de 2006, revocando la adjudicación de la subasta impugnada y devolviendo el caso a la Junta de Subastas para que evaluara si la oferta de Medical Biotronics era responsiva.*

*6. El 8 de mayo, Imaging Medical Supply hace un envío al Centro Cardiovascular de los documentos de recibo del equipo, solicitando la documentación para el levante de arbitrios. El 12 de mayo, el Lcdo. Humberto Monserrate le informó a GE Imagination que no se recibirá el equipo y el 30 de mayo se emite comunicado ratificando que el Centro no recibirá los equipos de la orden de compra 2006-2041 respondiendo a la determinación del tribunal la cual dejó sin efecto la adjudicación realizada de la subasta formal que dio pie a dicha orden. Igualmente, el Centro le informa que el compromiso económico de la referida orden de compra está sujeto a las determinaciones del Tribunal de Apelaciones (Ver Anejos).*

7. *Según establecido en la orden del tribunal, la Junta de Subastas revisó la subasta y las ofertas de GE Healthcare y Medical Biotronics. El día 28 de septiembre la Junta de Subastas emitió una resolución haciendo un rechazo global de todas las ofertas y recomendando a la Oficina de Compras que evaluara la necesidad de revisar las especificaciones, si alguna, y analizar si procedía la celebración de una nueva subasta o si habrá de comprar el equipo en mercado abierto.*

8. *El 18 de octubre de 2006, la compañía Medical Biotronics acusa el recibo de la determinación de la Junta de Subastas y establece su solicitud de que se le permita participar en cualquier subasta formal, procedimiento de mercado abierto o extraordinario que se utilice para adjudicar los bienes objeto de la subasta cancelada.*

9. *Por otro lado, el 22 de noviembre se había emitido una invitación para una solicitud de propuesta, la cual fue recogida por el Sr. Eduardo González, Representante de General Electric Healthcare. Cabe señalar, además, que el 29 de noviembre se le notificó a GE Healthcare que se procedía con la compra del equipo de telemetría a través de un procedimiento extraordinario de mercado abierto.*

10. *En la solicitud de propuesta se establecía como requisito de participación el compromiso de las compañías interesadas en participar en una reunión para clarificación de dudas a llevarse a cabo el día 7 de diciembre de 2006, a las 10:00 a.m. A esta reunión de clarificación de dudas asistieron, por parte de General Electric Healthcare, el Sr. Eduardo González y el Sr. José A. Correa. Posterior y a raíz de los asuntos discutidos en la reunión se emitió una enmienda en la cual, entre otras cosas, se aclaraba que el término de entrega de los equipos a adquirirse debía ser de 45 días a la fecha de recibo de la orden. Esta enmienda surge a raíz de lo establecido por los suplidores en la reunión de clarificación de dudas para evitar que la entrega fuera una de mucho peso en la solicitud de propuesta porque de otra manera la tornaría académica, ya que se conocía que la compañía General Electric Healthcare había recibido el equipo y el mismo estaba en Puerto Rico.*

11. *El Director Ejecutivo, dentro de las facultades que le competen, nombró un comité evaluador de las propuestas que finalmente se recibieron el día 20 de diciembre de 2006. Al momento de la entrega de las propuestas, se le entregaba a cada suplidor una citación para una reunión el día 22 de diciembre a partir de las 2:30 p.m. El propósito de esta reunión era realizar la presentación y explicación de las ofertas sometidas a los miembros del Comité. Esta determinación surgió como parte de los acuerdos de la reunión de clarificación de dudas llevada a cabo el 7 de diciembre de 2006. El 22 de diciembre, todas las compañías que hicieron sus ofertas se presentaron e hicieron la exposición a los miembros del Comité. Comparecieron las firmas:*

- *Unicare*

- *Pelegrina Medical*

- *General Electric Healthcare*

- *Medical Biotronics*

*Como resultado de la presentación de las ofertas surgió la necesidad de aclarar varias interrogantes, como por ejemplo:*

- *Explicación de garantía extendida*

- *Propuestas adicionales para términos de pago o financiamiento*

80

*Estos documentos se recibieron el 27 de diciembre, fecha límite que se había establecido para la entrega. Del análisis de los documentos sometidos a esta fecha, el Comité estableció dos (2) compañías como semifinalistas en el proceso dando peso a los siguientes factores.*

*- cumplimiento con especificaciones técnicas y generales*

*- cumplimiento con términos de garantía*

*- costo por unidad de telemetría adquirida*

*- términos de pago*

*- consumo de baterías*

*12. <u>A tenor con la recomendación del Comité y de acuerdo a los factores establecidos, el Director Ejecutivo decidió considerar la oferta de la compañía Medical Biotronic como la más beneficiosa para suplir las necesidades del hospital.</u>*

*13. A tenor con la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme, la mera presentación de recurso de revisión judicial, no interrumpe el proceso."* (Subrayado nuestro)

Inconforme, GE Medical comparece a este foro.

## II

En su petición de revisión, la recurrente esboza los siguientes señalamientos de errores contra la determinación de la CCCPRC de la cual se recurre.

*"Primer Error: Erró la CCCPRC al no emitir una resolución u orden a tenor con los requisitos dispuestos en la Sección 3.14 de la Ley de Procedimientos Administrativo Uniforme, con relación a la moción de reconsideración presentada por GE Medical.*

*Segundo Error: Erró la CCCPRC al adjudicar la compra en mercado abierto del sistema de telemetrías a Medical Biotronics.*

*Tercer Error: Erró la CCCPRC al no paralizar todo trámite relacionado a la adquisición del nuevo sistema de telemetrías."*

De los errores señalados, se desprenden dos controversias medulares que debemos atender y resolver.

Nos corresponde determinar si la CCCPRC en su resolución final relacionada con la adquisición de los equipos en cuestión, debió consignar determinaciones de hechos y conclusiones de derecho, según dispuesto en la Sección 3.14 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 L.P.R.A. sec. 2164.

También, debemos resolver si, a la luz del derecho estatutario y reglamentario aplicable, la CCCPRC tenía facultad para adquirir en mercado abierto los equipos de telemetrías requeridos; y, si de tener dicha facultad, actuó correctamente al pretender adquirirlos de Medical Biotronics.

## III

### A

Nuestro Tribunal Supremo ha sostenido que la buena y sana administración de un gobierno *"implica llevar a cabo sus funciones como compradores con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa."* Empresas Toledo, Inc. v. Junta, 168 D.P.R. ___ (2006), **2006 J.T.S. 147**; A.E.E. v. Maxon Eng. Servs., Inc., 163 D.P.R. ___ (2004), **2004 J.T.S. 199**; RBR Const., S.E. v. A.C., 149 D.P.R. 836, 848 (1999); Már-Mol, Co. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990). El objetivo fundamental de la subasta es, precisamente, proteger el erario consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible. Empresas Toledo, Inc. v. Junta, supra; A.E.E. v. Maxon Eng. Servs., Inc., supra; RBR Const., S.E. v. A.C., supra, págs. 848-849.

Por esto, el propósito de la legislación que regula la realización de obras y la contratación de servicios para el Gobierno y los sistemas de subastas gubernamentales es proteger la competencia para lograr los precios más bajos posibles, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgar los contratos y minimizar los riesgos de incumplimiento. Empresas Toledo, Inc. v. Junta, supra; A.E.E. v. Maxon Eng. Servs., Inc., supra; RBR Const., S.E. v. A.C., supra, pág. 849; Már-Mol, Co. v. Adm. Servicios Gens., supra; Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973); Justiniano v. E.L.A., 100 D.P.R. 334, 338 (1971). Por lo tanto, los tribunales tenemos el deber de asegurarnos que las instrumentalidades públicas cumplan con la ley, con sus propios procedimientos y que traten de forma justa a los licitadores al momento de adjudicar una subasta. RBR Const., S.E. v. A.C., supra, pág. 856.

No obstante, además del costo o precio, existen otros factores o criterios de igual importancia a considerar al adjudicar una subasta, entre los que se encuentran los siguientes: que las propuestas cumplan las especificaciones de la subasta; la habilidad del postor para realizar y para cumplir con el contrato; la responsabilidad económica del licitador, su reputación e integridad comercial, entre otros. Continental Constr. Corp. v. Municipio de Bayamón, 115 D.P.R. 559 (1984). Ningún postor tiene derecho a quejarse cuando otra propuesta se elige, bajo el fundamento de ser la más ventajosa, si dicha determinación se ha hecho a base del interés público. Great Am. Indemnity Co. v. Gobierno de la Capital, 59 D.P.R. 911 (1942).

Los tribunales, en su función revisora, tenemos el deber de examinar que en los procesos de subastas del gobierno no resulte adversamente afectado el erario público o se menoscabe el esquema de ley que persigue asegurar la integridad de las subastas públicas. Cotto Guadalupe v. Depto. de Educación, 138 D.P.R. 658 (1995).

Nuestro Tribunal Supremo también ha enunciado que en procedimientos administrativos informales, como lo es la adjudicación de una subasta, la agencia debe exponer las bases sobre las que descansa su decisión final, de forma que pueda ejercerse efectivamente el derecho a revisión judicial. Aunque, de ordinario, no se exigen determinaciones de hechos y de derecho en la adjudicación de procedimientos informales, como son las subastas, deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron la decisión. Pta. Arenas Concrete, Inc. v. J. Subastas, 153 D.P.R. 733, 735 (2001); L.P.C. & D. Inc. v. Autoridad de Carreteras, 149 D.P.R. 869, 878 (1999); Rivera v. Secretario de Hacienda, 119 D.P.R. 265 (1987); Godreau & Co. v. Comisión de Servicio Público, 71 D.P.R. 649 (1950).

Con excepción de la Sección 3.19 de la LPAU, 3 L.P.R.A. sec. 2169, en nuestra jurisdicción no existe una ley especial que regule los procedimientos de subasta. Por lo tanto, queda a la discreción de cada agencia gubernamental aprobar reglamentación que establezca los procedimientos y las guías que se han de seguir en la celebración de subastas. L.P.C. & D, Inc. v. Autoridad de Carreteras, supra, pág. 875.

Sobre este particular, el Tribunal Supremo resolvió recientemente en el caso *Empresas Toledo, Inc. v.*

*Junta, supra,* que, de ordinario, el licitador más bajo debe ser considerado para realizar la obra, siempre y cuando cumpla con los requisitos reglamentarios de la agencia y tenga la capacidad de realizar la obra de forma eficiente. Añadió que el hecho de que un licitador haga la propuesta más baja, no obliga al organismo público a adjudicar la subasta a dicho licitador, ya que existen consideraciones de interés público, como la necesidad de obras bien realizadas, que garanticen ganancias y no pérdidas, que hacen que la licitación más baja no resulte ser siempre la más económica. Concluyó nuestro más Alto Foro que la cuestión debe decidirse a la luz del interés público. y que ningún postor tiene derecho adquirido en ninguna subasta. *Great Am. Indem. Co. v. Gobierno de la Capital,* 50 D.P.R. 911 (1942).

## B

Por la autoridad que le fue conferida en la Ley Núm. 51 de 30 de junio de 1986, 24 L.P.R.A. sec. 343 *et seq.,* el CCCPRC aprobó y registró en el Departamento de Estado, el Reglamento Núm. 4727, *supra.* Con este abarcador Reglamento se persigue establecer y mantener una política administrativa general para la adquisición y venta de materiales y equipos, así como la obtención de servicios no profesionales, necesarios para el funcionamiento de dicho centro médico-hospitalario. Véase Artículo III de la Ley Núm. 51, *supra,* 24 L.P.R.A. sec. 343b.

El Artículo 15 del Reglamento provee el método de compra en mercado abierto en determinadas circunstancias, al disponer lo siguiente:

*"El Jefe de la División de Compras, por conducto del Director del Área de Servicios Generales, solicitará autorización al Director Ejecutivo para efectuar compras mediante el procedimiento de Mercado Abierto. El Mercado Abierto será aquella gestión de solicitud de cotizaciones a uno o más suplidores disponibles para suplir los bienes o servicios según los términos, condiciones y especificaciones establecidas. Siempre se procurará adquirir los mejores bienes, obras y servicios a los mejores precios.*

*...".*

La Sección 15.1.11 de este artículo dispone que:

*"Cuando ocurra un rechazo global de las ofertas, según lo dispuesto en este Reglamento, y la Junta de Subastas recomiende favorablemente la adquisición del bien o servicio mediante el procedimiento de mercado abierto."*

La Sección 23.5.10 del Artículo 23 del Reglamento provee los mecanismos de compra de bienes y servicios a poner en vigor en casos de rechazos globales de cotizaciones recibidas dentro de un proceso de subasta formal iniciado a la luz del Artículo 16 del Reglamento. Dispone esta sección lo siguiente.

*"No será necesaria la celebración de una subasta formal en los casos de rechazo global, si se justifica, en forma razonable, que el tiempo que tome la preparación y adjudicación de la misma, afectará adversamente el comienzo, desarrollo y uso de la obra, bien o servicio según se haya determinado conforme a la necesidad o planificación de la misma. En este caso, se procederá a la adquisición de la obra, bien o servicio en la modalidad de mercado abierto o mediante procedimiento extraordinario. De no existir la justificación, se seguirá el procedimiento de anunciar una nueva subasta."*

El Artículo 26 del Reglamento reconoce la ocurrencia de circunstancias en los procesos de adquisición de bienes o servicios que justifiquen la aplicación de mecanismos no ordinarios en dichos procesos.

## C

Reiteradamente, nuestro más Alto Foro ha resuelto que las decisiones de los organismos administrativos

merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Mun. de San Juan v. Plaza Las Américas*, 169 D.P.R. ___ (2006), **2006 J.T.S. 164**; *López v. Administración*, 168 D.P.R. ___ (2006), **2006 J.T.S. 146**; *Hernández v. Centro Unido*, 168 D.P.R. ___ (2006), **2006 J.T.S. 140**; *Comisionado de Seguros v. Puerto Rican Insurance Agency*, 168 D.P.R. ___ (2006), **2006 J.T.S. 142**; *Martínez v. Rosado*, 165 D.P.R. ___ (2005), **2005 J.T.S. 132**; *Polanco v. Cacique Motors*, 165 D.P.R. ___ (2005), **2005 J.T.S. 101**; *Otero v. Toyota*, 163 D.P.R. ___ (2005), **2005 J.T.S. 13**; *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. ___ (2004), **2004 J.T.S. 4**; *Pacheco Torres v. Estancias de Yauco*, 160 D.P.R. ___ (2003), **2003 J.T.S. 150**.

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *López v. Administración, supra; Camacho v. A.A.F.E.T.,* 168 D.P.R. ___ (2006), **2006 J.T.S. 97**; *Rebollo Vda. de Liceaga v. Yiyi Motors, supra.* Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387, 397 (1999).

## IV

Procede que analicemos los errores señalados por la recurrente y los planteamientos de las partes comparecientes sobre los mismos.

Luego de que este Tribunal en el recurso KLRA-2005-00945 revocara la adjudicación de la subasta impugnada y devolviera el caso a la Junta de Subastas de la CCCPRC, dicha Junta dictó resolución el 28 de septiembre de 2006. En dicha resolución determinó que después de reevaluar todas y cada una de las ofertas sometidas por los licitadores, concluia que ninguna de las licitaciones cualificaba o cumplía con los requisitos y especificaciones relacionados con los equipos a adquirir. Al así actuar, la Junta se acogió a las disposiciones del Artículo 23 del Reglamento 4727, *supra*, que provee los mecanismos para la compra de bienes y servicios cuando se da un rechazo global a las cotizaciones recibidas dentro de un proceso de subasta formal.

En su resolución, la Junta de Subastas detalló las razones y fundamentos que tenía para no aceptar las cotizaciones de los licitadores GE Health Care, Cardio Med Supply, GGF Medical Equipment, Puerto Rico Sales & Medical, Pelegrina Medical y Medical Biotronics. Somos de opinión que, con lo consignado en esta resolución, la Junta cumplió adecuadamente con la reglamentación pertinente.

De ahí en adelante, la CCCPRC se dio a la tarea de adquirir los equipos en el mercado abierto. Invitó a los suplidores de dichos equipos especializados a participar en el proceso. Se establecieron claramente las especificaciones y los términos para la entrega. Se celebraron reuniones con los suplidores interesados y se clarificaron dudas sobre el proceso. Se nombró un Comité Evaluador de todas las propuestas recibidas. Los suplidores licitantes tuvieron la oportunidad de presentar sus propuestas ante el Comité Evaluador. Así, comparecieron los licitadores Unicare, Pelegrina Medical, GE Health Care, y Medical Biotronics.

Al final del proceso, el Comité Evaluador recomendó a la CCCPRC aceptar la oferta de Medical Biotronics por considerarla más beneficiosa a las necesidades de la institución. Ante la solicitud de reconsideración que presentara el 31 de enero de 2007, la recurrente GE Medical, el 9 de febrero siguiente la CCCPRC, por conducto del Lcdo. Agustín Mangual Hernández, le comunicó amplios detalles de todo el proceso llevado a cabo, los cuales en esencia exponen las bases en que se fundamentó su decisión final. Véase *Pta. Arenas Concrete, Inc. v. J. Subastas, supra; L.P.C. & D. Inc. v. Autoridad de Carreteras, supra; Rivera v. Secretario de Hacienda, supra; Godreau & Co. v. Comisión de Servicio Público, supra.*

84

La evidencia sustancial que obra en el expediente administrativo sometido a nuestra consideración nos permite concluir que la CCCPRC cumplió adecuada y razonablemente con las normas legales y reglamentarias que le eran de aplicación al trámite administrativo efectuado. Véase *López v. Administración, supra; Camacho v. A.A.F.E.T., supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.*

Como antes dicho, la CCCPRC expuso razonablemente las bases sobre las que descansó su decisión de adquirir los equipos en cuestión en el mercado abierto y la selección que del suplidor de los mismos hizo. Las razones suficientes para poner a las partes en conocimiento de los fundamentos que propiciaron su decisión están contenidas en la resolución de la Junta de Subastas del 28 de septiembre de 2006 y en la contestación a la moción de reconsideración de GE Medical Systems suscrita el 9 de febrero de 2007 por el Lcdo. Agustín Mangual Hernández. Véase *Pta. Arenas Concrete, Inc. v. J. Subastas, supra; L.P.C. & D. Inc. v. Autoridad de Carreteras y Transportación, supra; Rivera Santiago v. Secretario de Hacienda, supra; Godreau & Co. v. Comisión de Servicio Público, supra.*

Tratándose en este caso de la adquisición de equipos médico-hospitalarios necesarios para el buen funcionamiento de la CCCPRC y que dicha entidad tiene el conocimiento experto para tramitar la adquisición de dichos equipos, somos de opinión que le debemos deferencia. Véase *Mun. de San Juan v. Plaza Las Américas, supra; López v. Administración, supra; Hernández v. Centro Unido, supra; Comisionado de Seguros v. Puerto Rican Insurance Agency, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Pacheco Torres v. Estancias de Yauco, supra.*

La recurrente no nos ha demostrado ni convencido que en el proceso llevado a cabo por la CCCPRC se haya afectado adversamente el erario público o se haya menoscabado la integridad de los procedimientos para la adquisición de bienes y servicios en la CCCPRC. Véase *Cotto Guadalupe v. Depto. de Educación, supra.*

## V

Por los fundamentos antes expuestos, se confirma la resolución y determinación final de la CCCPRC relacionado con la adquisición de los equipos de telemetría y, además, en consecuencia se deja sin efecto nuestra orden de paralización de los trámites dirigidos a la formalización contractual para la adquisición de dichos equipos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones