Hernández Torres, Juez Ponente
*958 TEXTO COMPLETO DE LA RESOLUCION
Comparece ante nos Waldemar López Matos h/n/c López Truck & Bus Parts (en adelante la parte recurrente) y nos solicita la revisión de la adjudicación de la Subasta Número 43/2000-2001, Operación de Mantenimiento y Reparación de la Flota Vehicular emitida por la Junta de Subastas del Municipio Autónomo de Carolina, la cual fue notificada por el Sr. Héctor L. Tirado Rivera, Presidente de la Junta de Subastas del Municipio de Carolina, el 11 de octubre de 2001. La Junta de Subastas del Municipio de Carolina adjudicó la Subasta Número 43/2000-2001, Operación de Mantenimiento y Reparación de la Flota Vehicular del Municipio de Carolina a MLS Puerto Rico, Inc.
Examinado el expediente ante nuestra consideración, así como el derecho aplicable, DENEGAMOS la expedición del auto de revisión.
I
El Municipio Autónomo de Carolina publicó el 4 de junio de 2001 en el periódico Primera Hora un aviso de subasta. Dicho aviso notificaba a la comunidad la Subasta Número 43/2000-2001 sobre Operación de Mantenimiento y Reparación de la Flota Vehicular e informaba además la celebración de una pre-subasta obligatoria para el 13 de junio de 2001 y la celebración de la subasta para el 27 de junio de 2001. A cada licitador se le solicitaba que acompañara su propuesta con una serie de documentos.
El 13 de junio de 2001, se celebró la pre-subasta, en la cual participaron como licitadores Grease Pit, MLS Puerto Rico, Inc., Jimar Auto Corporation y la parte aquí recurrente. Luego de varios cambios de fecha, la subasta formal se celebró el 31 de julio de 2001 únicamente entre MLS Puerto Rico, Inc. y la parte aquí recurrente. La propuesta sometida por MLS Puerto Rico, Inc., para el mantenimiento de la flota vehicular ascendió a la suma de un millón seiscientos sesenta y dos mil ciento noventa y ocho dólares ($1,662,198.00) y la de la parte recurrente ascendió a un millón ochocientos cincuenta y nueve mil seiscientos veinte dólares ($1,859,620.00). Del Acta de celebración de la subasta, surge que los licitadores que deseen someter cualquier comentario a la Junta de Subastas del Municipio Autónomo de Carolina lo podrán hacer por escrito en papel timbrado de su compañía y hacerlo llegar a la junta, quienes lo leerán y lo harán formar parte del expediente, pero que no será un elemento de juicio para hacer su evaluación.
El 6 de agosto de 2001, la compañía MLS Puerto Rico, Inc. envió una comunicación al Sr. Héctor L. Tirado, Presidente de la Junta de Subastas del Municipio Autónomo de Carolina, en la cual hace sus comentarios respecto a la propuesta de la parte recurrente con respecto a la subasta objeto de controversia.
*959 La Junta de Subastas del Municipio Autónomo de Carolina, como parte preliminar a la adjudicación de la subasta, recibe evaluaciones de las propuestas por dos (2) de sus miembros. Estos son: el Sr. Edwin Lebrón González, Director de la Oficina de Presupuesto y Finanzas del Municipio Autónomo de Carolina, quien utiliza los servicios especializados del Sr. Edwin Figueroa, Asesor Financiero del Municipio de Carolina, para llevar a cabo una evaluación financiera y económica de las propuestas; y por el Sr. Manuel Mangual, Director de la Oficina de Servicios Generales. Para el 25 de septiembre de 2001, el Sr. Edwin Figueroa decursó una misiva al Sr. Edwin Lebrón González, en la cual hizo una evaluación de los estados financieros de la firma aquí recurrente en la cual expuso que los estados financieros de esta empresa indicaban que la misma no tenía la capacidad financiera para brindar los servicios de mantenimiento de la flota vehicular requerido por el Municipio de Carolina. El Sr. Manuel Mangual, por su parte, el 28 de septiembre de 2001, emitió su evaluación de las ofertas de mantenimiento y reparación de la flota vehicular. En la misma recomienda que la buena pro sea adjudicada a la firma MLS Puerto Rico, Inc.
El 11 de octubre de 2001, el Municipio Autónomo de Carolina, por conducto del Sr. Héctor L. Tirado Rivera, Presidente de la Junta de Subastas, le notificó vía facsímil a la recurrente que la buena pro de la subasta había sido adjudicada a MLS Puerto Rico, Inc. La notificación de la adjudicación de la subasta lee como sigue:

"La Junta de Subastas del Gobierno Autónomo de Carolina le notifica que la 'buena pro' de la Subasta de referencia, le fue adjudicada a MLS Puerto Rico, Inc.

La junta tomó esta determinación amparada en las siguientes razones:

1. De los expedientes y Estados Financieros se desprende que no tienen la solvencia económica que se requiere para garantizar la continuidad de un servicio aceptable para el Municipio.

2. En su propuesta indican que toda reparación sobre $1,000.00 será en 'Non-Contract'. Esto aumentaría el costo de las reparaciones. Además, no cumplen con las especificaciones, ya que no detallan lo que será facturado como 'Non-Contract'.

3. La patente municipal es para la 'venta de piezas'.

De existir razones para no estar conformes con esta determinación, podrá solicitar reconsideración a la misma por escrito, en un término no mayor de veinte (20) días calendarios a partir de la fecha de la presente notificación o recurrir en recurso de revisión al Tribunal de Apelaciones.

Toda documentación relacionada con la subasta queda disponible para revisión en los archivos de la Oficina de Subastas del Municipio de Carolina a partir de la fecha de esta comunicación.

Cordialmente

(Firmado)

Héctor L. Tirado Rivera

Presidente Junta de Subastas"

El 18 de octubre de 2001, la parte recurrente, por medio de su presidente, el Sr. Waldemar López, solicitó a la Junta de Subastas del Municipio Autónomo de Carolina que le permitiera revisar toda la documentación de la subasta. El Municipio de Carolina accedió a dicha petición y le permitió a la parte recurrente la revisión de dicha documentación el día siguiente. Posteriormente, el 22 de octubre de 2001, la parte recurrente, por medio de otra misiva le solicitó al Municipio Autónomo de Carolina copia de otros documentos sobre los cuales tenía interés de recibir. Por lo que, el 29 de octubre de 2001, se le entregaron a la parte recurrente los documentos solicitados.
Por estar inconforme la parte recurrente con la adjudicación de la subasta el 31 de octubre de 2001 recurre *960 ante este Tribunal de Circuito de Apelación en revisión de la misma y nos señala que se cometieron los siguientes errores:

"Primer Error: Erró la Junta de Subastas del Municipio Autónomo de Carolina al no notificar adecuadamente la decisión administrativa de la Junta de subastas; al no exponer claramente una síntesis de la propuesta de MLS, Puerto Rico Inc., ni al expresar la fecha del archivo en auto de copia de la notificación de la adjudicación, violentándose los requisitos del debido proceso de ley.

Segundo Error: Actuó de forma arbitraria y caprichosa la Junta de Subastas del Municipio Autónomo de Carolina al no adjudicar la subasta a la parte aquí recurrente, quien resultó ser el postor más bajo, sin base racional para ello; esto en detrimento para el interés público.

Tercer Error: Actuó de forma arbitraria y caprichosa la Junta de Subastas del Municipio Autónomo de Carolina al permitir la comunicación ex-parte de un licitador luego de haberse sometido las correspondientes propuestas y tomar como fundamento para la no adjudicación a la parte aquí compareciente los argumentos de dicho licitador."

El 7 de noviembre de 2001, este Tribunal de Circuito de Apelaciones emitió una Resolución en la cual ordenó a la Junta de Subastas del Municipio Autónomo de Carolina, así como a MLS Puerto Rico, Inc., a que en el término de quince (15) días, contados a partir de la notificación de esta Resolución, expresaran su posición con respecto al recurso de revisión de subasta. El Municipio Autónomo de Carolina compareció el 3 de diciembre de 2001, y la compañía MLS Puerto Rico, Inc. compareció el 21 de diciembre de 2001. Con el beneficio de ambas comparecencias, nos encontramos en posición de resolver.
II
La buena y sana administración de un gobierno "implica llevar a cabo sus funciones como compradores con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". RBR Const., S.E. v. A. C., 2000 J.T.S. 7, Opinión de 22 de diciembre de 1999, a la pág. 464; Mar-Mol, Co. v. Adm. Servicios Gens, 126 D.P.R. 864, 871 (1990). El objetivo fundamental de las subastas es precisamente proteger el erario público consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el gobierno al mejor precio posible. Id. Por esto, el propósito de la legislación que regula la realización de obras y la contratación de servicios para el Gobierno y los sistemas de subastas gubernamentales, son proteger los intereses y dineros del pueblo al promover la competencia para lograr los precios más bajos posibles, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgar los contratos y minimizar los riesgos de incumplimiento. Id., a las págs. 464-5; Mar-Mol, Co. v. Adm. Servicios Gens, supra; Justiniano v. E.L.A., 100 D.P.R. 334, 338 (1971).
Por lo tanto, los tribunales tienen el deber de asegurarse de que las instrumentalidades públicas cumplen con la ley, con sus propios procedimientos y que tratan de forma justa a los licitadores al momento de adjudicar una subasta. RBR Const., S.E. v. A. C., a la pág. 468.
Las subastas que se llevan a cabo por los municipios se rigen por la Ley Núm. 81 de 30 de agosto de 1991, conocida como la Ley de Municipios Autónomos, según enmendada, 21 L.P.R.A. see. 4501 et seq., por el Reglamento de Subastas que haya promulgado cada municipio en particular y por el Reglamento Revisado Sobre Normas Básicas para los Municipios. El Municipio Autónomo de Carolina, el 22 de marzo de 1991, promulgó el Reglamento de Subastas del Gobierno Municipal de Carolina.
El Artículo 15.002 de la Ley Núm. 81 del 30 de agosto de 1991, 21 L.P.R.A. see. 4702, establece que:
*961 (2) El Tribunal de Circuito de Apelaciones revisará, con exclusividad, el acuerdo final o adjudicación de la Junta de Subastas. La solicitud de revisión se instará dentro del término jurisdiccional de veinte (20) días contados desde el archivo en autos de copia de la notificación del acuerdo final o adjudicación." [Enfasis Suplido].
En reiteradas ocasiones, el Tribunal Supremo de Puerto Rico ha reafirmado que el derecho a cuestionar una determinación mediante revisión judicial, al ser expresamente provisto por estatuto, pasa a formar parte del debido proceso de ley, resultando, por tanto, indispensable y crucial el que se notifique adecuadamente dicha determinación a todas las partes cobijadas por tal derecho. Véase: Im Winner, Inc. v. Muñc, de Guayanilla, 2000 J.T.S. 86, Opinión de 17 de mayo de 2000, a la pág. 1133, y casos allí citados.
Para uno poder hacer efectivo el derecho de revisión judicial que consagra el Artículo 15.002 de la Ley Núm. 81 de 30 de agosto de 1991, supra, en la notificación de la adjudicación de una subasta por parte de la correspondiente Junta de Subastas Municipal, es necesario que se advierta: el derecho a procurar revisión judicial; el término disponible para así hacerlo; y la fecha del archivo en autos de copia de la notificación de la adjudicación. Im Winner, Inc. v. Muñc, de Guayanilla, supra, a la pág. 1134. Unicamente a partir de la notificación así hecha es que comenzará a decursar el término para acudir en revisión judicial. Id.
También se ha establecido que "la notificación de la adjudicación de una subasta debe ser fundamentada, al menos deforma sumaria y sucinta. Por lo menos debe incluir la siguiente información: los nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial". Punta Arenas Concreate, Inc. v. Muñc, de Hormigueros, 2001 J.T.S. 50, opinión de 30 de marzo de 2001, a la pág. 1079; L.P.C. & D. v. A. C., 2000 J.T.S. 9, Opinión de 27 de diciembre de 1999, a la pág. 477. Véase además: RBR Const., S.E. v. A. C., supra, a la pág. 467.
Por tanto, es necesario cumplir con todos los requisitos de notificación de la adjudicación de una subasta, ya que los mismos son necesarios para cumplir con el debido proceso de ley, permitiéndose así que los licitadores perdidosos puedan cuestionar la adjudicación de la subasta y que el foro revisor tenga una visión clara de lo que está revisando.
Al requerir que se incluyan los fundamentos en la notificación, nos aseguramos de que los tribunales puedan revisar dichos fundamentos para determinar si la decisión fue una arbitraria, caprichosa o irrazonable. Punta Arenas Concreate, Inc. v. Muñc, de Hormigueros, supra. Además, al respecto el Tribunal Supremo ha establecido que:
"[Ejste requisito de una notificación fundamentada es de especial importancia en el caso de los municipios, dada la gran cantidad de subastas que celebran los mismos y la gran cantidad de fondos públicos que se desembolsan como consecuencia. De no existir esta norma, el tribunal se vería en la necesidad de celebrar un juicio de novo cada vez que fuera a revisar las actuaciones de las agencias y los municipios. Esto sería sumamente ineficiente y promovería el que dichos organismos fundamentaran sus actuaciones a posteriori." Id.
Otros objetivos importantes que se promueven al requerir que la notificación sea debidamente fundamentada son los siguientes:
"(1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo, y al estar mejor informada, poder decidir si acude al foro judicial o acata *962 la determinación; (4) evitar que los tribunales se apropien defunciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza." Id.; L.P.C. & D. v. A.C., supra, citando a Rivera Santiago v. Secretario de Hacienda, 119 D.P.R. 649 (1950).
Estos requisitos, anteriormente expuestos, aplican de igual forma a la revisión de resoluciones de agencias administrativas como a la revisión de adjudicación de subastas municipales a tenor con lo dispuesto en el Artículo 15.002 (2) de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4702 (2).
El Artículo 11.006 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4506, establece lo siguiente:
"§ 4506. Junta de Subasta - Funciones y deberes.
La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros.

(a) Criterios de adjudicación. - Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles, adjudicará a favor del postor más alto. La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del lidiador, su reputación e integridad comercial, la calidad del equipo, producto o servicio, y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.

La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.

Tal adjudicación de una subasta será notificada a todos los lidiadores mediante correo certificado con acuse de recibo. En la consideración de las ofertas de los lidiadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie....". [Enfasis Suplido].
La Sección 1, Capítulo VIII, Parte I del Reglamento Revisado Sobre Normas Básicas para los Municipios de Puerto Rico, Reglamento Número 5262 de 30 de junio de 1995 de la Oficina del Comisionado de Asuntos Municipales (OCAM), establece:

"Sección 1: Principio de Competencia

Toda compra de efectos, materiales, comestibles, servicios, medicinas, equipos y todo contrato para cualquier construcción, obra o mejora pública se efectuará mediante competencia al postor responsable cuya oferta sea más ventajosa al Gobierno Municipal, considerando sólo el precio y las especificaciones, términos y estipulaciones requeridas." [Enfasis Suplido].
Además, la Sección 6, Capítulo VIII, Parte I del Reglamento Revisado Sobre Normas Básicas para los. Municipios de Puerto Rico, supra, establece lo que se considera un postor responsable:

"Sección 6: Postor Responsable

El término 'postor responsable' significa aquél que:

*963
(a) Tiene recursos financieros adecuados para cumplir su obligación o la habilidad de obtener tales recursos.

(b) Es capaz de asumir con los términos requeridos o propuestas de entrega, según estipulados o requeridos.

(c) Tiene un historial de cumplimiento satisfactorio.

(d) Tiene un historial satisfactorio de integridad y ética comercial.

(e) Tiene la organización, experiencia, contabilidad, y controles operacionales y destrezas técnicas necesarias para cumplir sus obligaciones.

(f) Tiene equipo técnico y facilidades necesarias, o la habilidad de obtener tal equipo y facilidades, y

(g) Está de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables.” [Enfasis Suplido].
Por otro lado la Sección 9, Capítulo VIII, Parte III, del Reglamento Revisado Sobre Normas Básicas para los Municipios, supra, dispone de la siguiente manera las normas de adjudicación de subastas para los municipios:

"Sección 9: Ñormal General de Adjudicación

Al adjudicar las subastas, la Junta se atendrá, en primera instancia, a la siguiente y única forma de general de adjudicación.

(a) Subasta de Adquisición

La adjudicación de las subastas de adquisición se hará a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento que lleve al ánimo de la Junta la seguridad de que cumplirá con los términos del contrato que en su día se otorgue, siempre y cuando su oferta reúna en el orden establecido, los siguientes requisitos:

1. que cumpla con las especificaciones;

2. que cumpla con las condiciones y demás requisitos establecidos en el pliego de la subasta;

3. que sea la más baja en precio.

(b) Subastas de Ventas

Las subastas de venta se adjudicarán a favor del postor cuya oferta sea la más alta y razonable en relación a la tasación del bien." [Enfasis Suplido].
La sección D del Reglamento de Subastas del Gobierno Municipal de Carolina de 22 de marzo de 1991, establece todo lo relacionado con la adjudicación de subastas de la siguiente manera:
"1. Después de celebrada la vista, la Junta de Subastas adjudicará la subasta al postor razonable más bajo en caso de compras o construcciones, siempre que la oferta esté en estricto acuerdo con las especificaciones, términos y estipulaciones establecidos en los pliegos de subastas, o al postor más alto en caso de venta o *964 arrendamiento de propiedad municipal. Al considerar ofertas, se tomará en cuenta que éstas sean conforme a especificaciones, términos de entrega y otras condiciones insertadas en el pliego de subasta. Si no se adjudica la subasta al postor ya indicado, se indicará en el acta correspondiente con cuál o cuáles especificaciones, términos o condiciones de la subasta dicho licitar no cumplió y cualquier razón adicional que se hubiera tenido en cuenta al hacer la adjudicación.

6. La Junta de Subasta podrá rechazar la oferta más baja en precio cuando tenga conocimiento y exista evidencia de que el lidiador que hace la oferta no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados anteriormente, si la naturaleza o calidad de los suministros, materiales o equipo no se ajustan a los requisitos, si los precios cotizados se consideran irrazonables o si el interés público con ello se beneficiaría."

La sección H del Reglamento de Subastas del Gobierno Municipal de Carolina de 22 de marzo de 1991, dispone la forma en que se debe dar aviso a los licitadores de la adjudicación de la subasta de la siguiente forma:

"Sección H: Aviso de Adjudicación

1. Luego de adjudicar la subasta, se enviará copia de la minuta que contiene las propuestas y el otorgamiento de la subasta a la División de compras del municipio, así como todos los documentos relativos a la subasta.

2. Se avisará a todos los licitadores los resultados finales de la subasta con la firma del Presidente de la Junta de Subastas.

3. El contrato con el lidiador agraciado no deberá formalizarse hasta tanto transcurran 20 días que es el límite de tiempo que tienen los demás licitadores para impugnar la adjudicación."
III
La parte recurrente del caso de autos, en síntesis, señala que erró la Junta de Subasta del Municipio Autónomo de Carolina al no notificar adecuadamente la adjudicación de la subasta y que su decisión fue una arbitraria y caprichosa. Estos señalamientos de error no se cometieron. Veamos.
La parte recurrente plantea en su escrito de revisión que la notificación es insuficiente porque no expone una síntesis de las propuestas de los licitadores de la subasta, no expresa la fecha del archivo en autos de copia de la notificación de la adjudicación y no fundamenta adecuadamente su decisión.
En el caso de autos, se señala que la notificación de la adjudicación de la subasta no fue una adecuadamente fundamentada. Sin embargo, lo que la jurisprudencia requiere es que la dicha notificación sea fundamentada, aunque sea de manera sumaria y sucinta. En este caso, la Junta de Subastas del Municipio de Carolina, al notificar la adjudicación de la subasta a la parte aquí recurrente, expresó tres razones por las cuales le adjudicaba la subasta a MLS Puerto Rico, Inc. Estas razones fueron: (1) que de los expedientes y estados financieros se desprende que no tienen la solvencia económica que se requiere para garantizar la continuidad de un servicio aceptable para el Municipio; (2) que en su propuesta indican que toda reparación sobre $1,000.00 será en "Non-Contract", teniendo esto el efecto de aumentar el costo de las reparaciones, que no cumplen con las especificaciones, ya que no detallan lo que será facturado como "Non-Contract", y (3) que la patente municipal es para la venta de piezas. De una lectura de la notificación de,cursada por la Junta de Subastas de Carolina a la parte recurrente, se pueden conocer los motivos y razones que tuvo dicha junta para otorgar la subasta a MLS Puerto Rico, Inc. Por lo tanto, el requisito de que la notificación sea una fundamentada y que ponga en posición a los licitadores perdidosos en posición de solicitar reconsideración y revisión de dicha *965 determinación fue cumplido, ya que la parte recurrente quedó debidamente informada de las razones por las cuales no se le adjudicó la subasta.
La notificación del 11 de octubre de 2001 que recibió la parte recurrente, en efecto, contenía las razones por las cuales no se les adjudicó la subasta, los derechos que tenía si interesaba solicitar reconsideración o revisión de la decisión administrativa y los términos que tenía para ello.
Lo que la notificación no contiene es un listado de los licitadores con sus propuestas y la certificación de archivo en auto de la notificación de la misma. No obstante estas omisiones, la notificación no se tomó inoficiosa e insuficiente. Aunque expresamente la notificación de la subasta no dice las palabras sacramentales de que certifica el archivo en autos de la notificación de la misma, dicha notificación contiene la fecha del 11 de octubre de 2001, fecha en la cual se notificó vía fax la parte recurrente. En el expediente, además, obra evidencia de que en esta misma fecha la parte recurrente recibió el fax de la notificación de la adjudicación de la subasta, mediante confirmación del recibo de la notificación en la fecha antes señalada. Véase: Exhibit MC-13 del Escrito en Oposición al recurso de Revisión Instado suscrito por el Municipio de Carolina. Es a partir de este momento que la parte recurrente queda debidamente informada de la decisión tomada por la Junta de Subastas del Municipio Autónomo de Carolina y a partir de la cual se le notifica de sus derechos. Cabe además señalar que dicha omisión no ha tenido consecuencia alguna, ya que como cuestión de hechos en el caso de autos la parte recurrente interpuso el recurso de revisión dentro del término que se le advirtió en la notificación. La omisión sólo privó al término de su carácter fatal, ya que el término jurisdiccional no comenzó a transcurrir. Im Winner, Inc. v. Munc, de Guayanilla, supra.
Aunque en la notificación de la adjudicación de la subasta no se indicó que MLS Puerto Rico, Inc., fue el otro licitador ni se expuso, en síntesis, en qué consistió su propuesta, como es requerido en este tipo de casos, esto tampoco le causó un perjuicio a la parte recurrente, ya que en todo momento dicha parte tuvo acceso al expediente de la subasta, por lo tuvo conocimiento de lo propuesto por la otra parte. Del expediente de la revisión ante nuestra consideración surge que, en efecto, la parte recurrente antes de radicar su recurso de revisión ante nuestra consideración, la Junta de Subastas del Municipio de Carolina le facilitó toda la documentación que por dicha parte fue requerida. Véase Exhibit MC-14, Exhibit MC-15 y Exhibit MC-16 del Escrito en Oposición al Recurso de Revisión Instado suscrito por el Municipio de Carolina.
También la parte recurrente señala que erró la Junta de Subastas del Municipio Autónomo de Carolina al adjudicar la subasta de manera arbitraria y caprichosa, a pesar de ser su propuesta la más baja en costos y por haber permitido que el licitador que obtuvo la buena pro sometiera comentarios a la Junta sobre la propuesta del licitador contrario.
En el caso de autos, la decisión de la Junta de Subasta del Municipio Autónomo de Carolina no fue una arbitraria y caprichosa. Por el contrario, es el resultado del análisis realizados po.r ,1a Junta en .el mejor interés de los ciudadanos de Carolina.
Según surge del expediente, la parte recurrente no cuenta con la solvencia económica suficiente y tampoco detalló las partidas que se facturarían como "non-contract" y ofreció una cosa distinta a lo especificado. Las especificaciones de la Subasta Número 43/2000-2001, Addenda 4, Sección 15.6.2, establecen que los "costos incurridos en las reparaciones de unidades que resulten de la deficiencia de los componentes principales o mayores como motor, transmisión, diferencial, computadora que sean estimados a ser o sobrepasar setecientos cincuenta dólares ($750.00) por cada reparación, el Municipio pagará el exceso de los $750.00." Véase Exhibit 2 de Petición de la Adjudicación de Subasta Municipal, a la pág. 160. Sin embargo, lo que la parte recurrente propuso fue que: "cualquier reparación que sea necesaria como consecuencia de los componentes principales o mayores como motor, transmisión, diferencial y computadora que sean estimados a pasar de los $1,000.00 dólares por cada reparación, el Municipio pagará esa reparación y no será parte del presupuesto operacional". Véase Exhibit 2 de Petición de la Adjudicación de Subasta Municipal, a la pág. 31. En este *966 aspecto, la propuesta de la parte recurrente no cumplió con las especificaciones de la subasta.
Por otro lado, el historial económico y la capacidad financiera de la parte recurrente no reflejan que la recurrente tuviera la solidez económica necesaria para garantizar el cumplimiento del contrato. Esta determinación está basada en el informe que sometió el asesor financiero del municipio, el Sr. Edwin Figueroa, el cual establece que los estados financieros de la compañía recurrente indican que la misma no tiene capacidad financiera para brindar los servicios de mantenimiento de la flota vehicular del Municipio de Carolina. Véase Exhibit 2 de Petición de la Adjudicación de Subasta Municipal, a las págs. 197-199.
Además, a tenor con lo dispuesto en el Artículo 11.006 de la Ley Núm. 81 de 30 de agosto de 1991, supra, dispone que una subasta puede ser adjudicada a un postor que no sea necesariamente el más bajo si con ello se beneficia el interés público como sucede en este caso.
Tampoco la Junta actúo de manera arbitraria y caprichosa al aceptar los cometarios de MLS Puerto Rico, Inc., con respecto a la propuesta a la parte recurrente, ya que del Acta de la Celebración de la Subasta, la Junta le dio la oportunidad a todos los licitadores participantes de que sometieran a la Junta todos los comentarios que consideraran pertinentes. Véase Exhibit MC-3 del escrito en Oposición al Recurso de Revisión instado por el Municipio de Carolina, a las págs. 3-5. MLS Puerto Rico, Inc. decidió hacer uso de dicha oportunidad, por lo que no se puede decir que la Junta actuó de manera arbitraria y caprichosa, ya que ambos licitadores estaban en igualdad de condiciones. La recurrente tuvo la misma oportunidad de comentar sobre la oferta de MLS Puerto Rico, Inc., pero, sin embargo, no lo utilizó.
En conclusión, no se puede decir que a la parte recurrente se le violentó su derecho a un debido proceso de ley cuando en todo momento estuvo en un ambiente de cooperación. La Junta de Subastas actuó conforme a derecho y se le concedió oportunidad a todas las partes para exponer sus respectivas posiciones, contrario a lo que alega la parte recurrente.
IV
Por los fundamentos anteriormente expuestos, se DENIEGA la expedición del auto solicitado. La Junta de Subastas actuó conforme a derecho y le concedió oportunidad a todas las partes para exponer sus respectivas posiciones, contrario a lo que alega la parte recurrente.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General