*800 TEXTO COMPLETO DE LA SENTENCIA
La recurrente, AA Billboard Company, Inc. d/b/a Allied Group (AA), nos solicita que revoquemos la adjudicación de la “Solicitud de Propuestas para el Arrendamiento de Espacios para Fines Publicitarios en Facilidades del Municipio de San Juan” notificada por la Junta de Subastas (la Junta) del Municipio de San Juan (el Municipio) el 31 de agosto de 2006. En el correspondiente Aviso de Adjudicación, la Junta adjudicó los espacios externos o “mesh” a Outdoor Media Display Posters, Inc. (Outdoor) y los espacios internos tales como, paredes y pisos intemos, puertas y paredes de elevadores, espacios en facilidades sanitarias y zafacones a Up & Down Indoor Media (Up & Down).
En síntesis, la recurrente alega que la Junta erró al no adjudicar la subasta a AA, quien fue el postor más alto y con las mejores condiciones para el beneficio y mejor interés del Municipio y único en cumplir con las especificaciones de la invitación y pliegos de la subasta. También -aduce que la Junta incidió al no cumplir y seguir las disposiciones del Reglamento de Subastas del Municipio de San Juan (el Reglamento) y las especificaciones de la invitación y pliegos de la subasta.
Considerado el recurso de revisión judicial, sin mayores trámites, se confirma la adjudicación de la subasta notificada el 31 de agosto de 2006 por la Junta de Subastas del Municipio de San Juan, a favor de los licitadores Outdoor y Up & Down. Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 2004, 4 L.P.R.A. Ap. XXII-B.
I
En abril de 2006, la Junta de Subastas del Municipio de San Juan publicó una solicitud de propuestas para el arrendamiento de espacios externos e internos para fines publicitarios en las facilidades del Municipio de San Juan, tales como, el Coliseo Roberto Clemente, el Hiram Birthorn, la terminal de carros públicos, los elevadores del Colegio Tecnológico, el CDT de Río Piedras y las facilidades sanitarias localizadas en el Coliseito Pedrín Zorilla, la Alcaldía y otros. Tal solicitud también interesaba propuestas para la publicidad en los pisos de las facilidades del Municipio, al igual que en las paredes, las fachadas externas, los espacios en los interiores de los elevadores, dentro de las facilidades sanitarias y cualquier otro espacio externo o interno a ser identificado por el proponente, sujeto a la aprobación del Municipio. La solicitud de propuestas hizo claro que se prohibía la colocación de anuncios relacionados a cigarrillos, bebidas alcohólicas y cualquier otra prohibición establecida mediante ordenanzas, ley, reglamentos y resoluciones tanto estatales como municipales.
Al tenor de dichos propósitos, se le requirió a los proponentes incluir en su propuesta el método a ser utilizado para la instalación de la publicidad, así como el período de tiempo que le tomaría dicha instalación. Además, se precisaron los siguientes criterios a ser tomados en consideración al momento de evaluar las *801 propuestas:

“1. Cantidad económica a pagar por el arrendamiento de los espacios (40%)

2. Innovación y creatividad de la propuesta (20%)

3. Experiencia en la industria (20%)

4. Capacidad financiera de la empresa (20%)”

El Municipio, asimismo, requirió de los proponentes someter su oferta económica de manera clara incluyendo, sin limitarse, al porciento sobre las ventas a ser pagado al Municipio, la cantidad fija a pagar por el arrendamiento de espacio y la frecuencia de los pagos.
En los referidos documentos, también se le informó a los licitadores el proceso de adjudicación. De este modo, se les indicó que la Junta adjudicaría la propuesta al postor más alto, por ser un caso de arrendamiento de espacio, y que se tomaría en consideración que las propuestas fuesen conforme a las especificaciones y términos de entrega. Se les precisó que además se tomarían en consideración la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, la reputación e integridad comercial, al igual que otras condiciones incluidas en el pliego de subastas. Finalmente, la solicitud de propuestas puntualizó que “la Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o más alto, según sea el caso si con ello se beneficia el interés público” y que podría adjudicar a más de un licitador un renglón, renglones o una subasta en total cuando el interés público se beneficie con ello. 
Así las cosas, la recurrente AA, y las recurridas Outdoor y Up & Down presentaron sus respectivas propuestas o licitaciones. AA licitó por todos los espacios incluidos en la invitación a subasta, lo que incluia tanto la publicidad exterior como la interior. Por su parte, Outdoor licitó para la publicidad exterior solamente y Up & Down únicamente para la publicidad de interior.
Luego de la Junta recibir las distintas posturas y evaluarlas, el 28 de agosto de 2006 emitió el Aviso de Adjudicación recurrido, el cual fue notificado el 31 de agosto de 2006, con las correspondientes advertencias y apercibimientos. En el Aviso, la Junta determinó adjudicar la publicidad externa a Outdoor y la interna a Up & Down.
Conforme reza el Aviso de Adjudicación recurrido, la Junta acreditó que con dicha adjudicación el Municipio recibiría un ingreso proyectado mínimo de $27,317.00 mensuales, una suma mayor que la ofrecida por la recurrente. Fundamentó su decisión además en que las licitadoras seleccionadas reconocían la facultad del Municipio de objetar ciertos tipos de propaganda, cuyo contenido fuese contrario a los mejores intereses de los ciudadanos de la Ciudad Capital, y en que éstas reconocían que su oferta podría ser aumentada en la medida en que se dispusiera de facilidades adicionales que no hubiesen sido contempladas en la solicitud de propuestas.
Insatisfecha con dicha determinación, el 7 de septiembre de 2006, la recurrente presentó una Moción de Reconsideración e Impugnación de Subasta suscrita por el Sr. Rafael A. Ortiz Elias, como su representante corporativo, la cual fue notarizada por la Leda. Socorro Cintrón Serrano. La referida reconsideración no fue considerada en el plazo de 10 días laborables dispuesto en el Reglamento para ello.
Así las cosas, el 11 de octubre de 2006, AA presentó ante nos el recurso de revisión de epígrafe, en el que señala lo siguiente:

“A) Erró la Junta de Subastas del Municipio de San Juan al no adjudicar la subasta a la recurrente, quien 
*802
fue el postor más alto y con las mejores condiciones para el beneficio y el mejor interés para el Municipio de San Juan y único en cumplir con las especificaciones de la Invitación y Pliegos de la subasta.

B) Erró la Junta de Subastas al no cumplir y seguir las disposiciones del Reglamento de la Junta de Subastas del Municipio de San Juan y las especificaciones de la Invitación y Pliegos de la subasta. ”

Dicho recurso fue acompañado con una Moción Urgente en Auxilio de Jurisdicción, la cual fue declarada no ha lugar en nuestra Resolución emitida el 25 de octubre de 2006.
El 27 de octubre de 2006, el Municipio y la Junta presentaron una moción en la que solicitaron la desestimación del recurso. Adujeron que el recurso había sido presentado tardíamente debido a que la moción de reconsideración presentada por AA no había sido considerada por la Junta, por lo que nunca interrumpió el plazo para solicitar la re visión judicial. Así, sostuvieron que el término jurisdiccional correspondiente venció el 20 de septiembre de 2006, por lo que, habiéndose radicado el recurso el 11 de octubre de 2006, el mismo era tardío.
De otra parte, argüyeron que la moción de reconsideración presentada por la recurrente fue firmada por un oficial corporativo de AA, lo que constituyó un acto nulo, de conformidad con la normativa del Tribunal Supremo esbozada en el caso de B. Muñoz v. Prod. Puertorriqueña, 109 D.P.R. 825, 827, (1980), que resolvió que las criaturas corporativas no podían representarse por derecho propio en un procedimiento judicial y que tampoco lo podían hacer en un foro administrativo, al tenor de Warner Lambert Industrial Development Corp. v. Comisión Industrial, 111 D.P.R. 842, (1982).
En escrito presentado el 13 de noviembre de 2006, Up & Down se unió a la aludida Moción de Desestimación, a pesar de que el 27 de octubre de 2006 presentó su Alegato en Oposición al Recurso.
El 15 de noviembre de 2006 tanto el Municipio como la Junta presentaron una Segunda Moción de Desestimación en la cual reiteraron sus previos argumentos para desestimar el recurso. Luego de conceder plazo al efecto, el 29 de noviembre de 2006, la recurrente presentó su Oposición a la Moción de Desestimación, la cual fue objeto de un escrito de réplica presentado por el Municipio y la Junta el 13 de diciembre de 2006.
Con el beneficio de las referidas comparecencias de las partes, y por ser una cuestión de umbral, procedemos a resolver la Moción de Desestimación presentada por el Municipio y la Junta.
II
El inciso 13.2 del Artículo XIII del Reglamento de Subastas del Municipio de San Juan aprobado el 6 de mayo de 1999, dispone que el aviso de adjudicación deberá incluir las advertencias correspondientes a los licitadores que no estén de acuerdo con la adjudicación. Ello, con el propósito expreso de que éstas puedan solicitar una reconsideración ante la Junta de Subastas dentro del término improrrogable de 5 días laborables, a partir de la fecha en que tal licitador sea notificado. Dicho inciso especifica que “la solicitud de reconsideración debe ser juramentada y expondrá las razones por las que solicita la reconsideración”.
En el caso ante nos, la recurrente AA presentó la reconsideración siguiendo los requisitos establecidos en el Reglamento. Esto es, presentó su moción de reconsideración suscrita bajo juramento por el Sr. Rafael Ortiz Elias en representación de la corporación AA Billboard Company, Inc.
Es la posición del Municipio y la Junta, entre otros fundamentos, que debemos desestimar el recurso de autos porque la recurrente, al suscribir una moción de reconsideración a través de un oficial corporativo, contravino la normativa expuesta en B. Muñoz v. Prod. Puertorriqueña, supra, lo que provocó que la moción de reconsideración se considerara como nunca presentada.
*803 Aunque conocemos y seguimos la normativa esbozada por el Tribunal Supremo en B. Muñoz v. Prod. Puertorriqueña, supra, somos del criterio que aplicar la misma en este caso ocasionará un claro menoscabo a los derechos de la recurrente a solicitar la revisión judicial del Aviso de Adjudicación.
Advertimos de una lectura integrada del Artículo XIII del Reglamento que es el licitador que se siente afectado por una adjudicación, sea persona natural o jurídica, el que deberá presentar la moción de reconsideración bajo juramento y con los fundamentos que sustentan su solicitud de remedio. El Reglamento define en su artículo Y (19) al licitador no agraciado como “[p]ersona natural o jurídica a quien no se le adjudica la subasta ni ninguna de las partidas o renglones de la subasta”. 
De este modo, al confrontar las claras disposiciones del inciso 13.2 del Reglamento con lo resuelto por el Tribunal Supremo en B. Muñoz v. Prod. Puertorriqueña, supra, concluimos que el primero no está atemperado o no es cónsono en lo allí decidido por el Tribunal Supremo.
Si un licitador corporativo perdidoso sigue lo dispuesto en el Reglamento, se estará arriesgando a que la propia Junta plantee que el acto así ejecutado por virtud de su Reglamento es nulo por ser contrario a lo resuelto en B. Muñoz v. Prod. Puertorriqueña, supra. Ciertamente, esta situación causa la desarticulación del proceso y el posible menoscabo de los derechos a la revisión judicial de un licitador que quiere cumplir con el Reglamento, como hizo la recurrente en este caso. Por ello, entendemos que no procede que apliquemos esa normativa al caso de autos hasta que el Municipio y la Junta corrijan la aludida aparente contradicción doctrinal. Conminamos al Municipio de San Juan y a su Junta de Subastas que evalúen la deseabilidad de atemperar su Reglamento con lo resuelto por el Tribunal Supremo respecto a las corporaciones que se representan por derecho propio.
Por otro lado, tampoco compartimos el razonamiento de las recurridas en torno a que, aun asumiendo que la moción de reconsideración hubiese sido presentada conforme a derecho, el recurso instado por AA es tardío. Entienden las recurridas que, al no haber sido considerada la moción de reconsideración por la Junta dentro de los 10 días laborables con que cuenta para ello, no se interrumpió el plazo para solicitar la revisión judicial. Argumentan que al no producirse la interrupción del plazo de 20 días para solicitar la revisión judicial, el mismo venció el 20 de septiembre de 2006 y, por ende, el recurso de autos es tardío, pues se presentó el 11 de octubre de 2006.
Entendemos que el recurso de autos fue presentado en tiempo. Nos explicamos. El aviso de adjudicación de autos fue notificado el 31 de agosto de 2006. De este modo, conforme al Reglamento, la recurrente tenía hasta el 8 de septiembre de 2006 para presentar su moción de reconsideración. Surge del récord que ésta fue presentada el 7 de septiembre de 2006. Así, desde dicha fecha comenzaron a decursar los 10 días laborables que de conformidad con el Reglamento la Junta contaba para considerar la moción de reconsideración. Este plazo de 10 días laborables venció el 21 de septiembre de 2006. Desde dicha fecha, comenzó a decursar el plazo de 20 días naturales para radicar el recurso de revisión judicial, el cual venció el 11 de octubre de 2006, fecha en que el mismo fue presentado por la recurrente.
Por los fundamentos que anteceden, declaramos no ha lugar las Mociones de Desestimación presentadas por las recurridas. Por lo tanto, procede que resolvamos el recurso en los méritos, no sin antes esbozar la normativa de derecho aplicable.
III
Como se sabe, el ordenamiento jurídico vigente dispone que las decisiones de las agencias administrativas serán respetadas por los tribunales, “si se basan en evidencia sustancial que obra en el expediente administrativo”. See. 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A., sec. 2175 (Supl. 2006). Ocean View v. Pascual García, opinión de 31 de marzo de 2004, 2004 JTS 59, y Rivera *804 Concepción v. ARPE, 152 D.P.R. 116, 123 (2000).
Además, es norma reiterada que el que impugna una decisión de una agencia administrativa tiene el peso de la prueba para derrotar la presunción de corrección que a ésta le cobija. Para sustentar su posición, el que cuestiona el dictamen administrativo debe producir prueba suficiente para derrotar su validez o demostrar que la agencia actuó de manera arbitraria, ilegal o caprichosa. OEG v. Rodríguez, 2003 JTS 51; Misión Ind. PR v. JP. y A.A.A., 142 D.P.R. 656, 673-674, 1997.
En cuanto al proceso de subasta, resulta conveniente destacar que la decisión sobre cuál propuesta debe resultar agraciada debe tomarse preponderantemente a la luz del mejor interés público, por cuanto cualquier reclamo de derechos por parte de algún postor está supeditado a ese criterio fundamental. Great American Indemnity Co. v. Gobierno de la Capital, 59 D.P.R. 911, 917 (1942). Más aún, se reconoce que en ausencia de mala fe, fraude o un claro abuso de discreción, ningún postor tiene derecho a quejarse cuando otra propuesta es elegida como la más ventajosa.
En nuestra jurisdicción, el objetivo fundamental de la subasta es proteger al erario y para ello es necesario fomentar la competencia libre y transparente entre el mayor número de licitadores posibles. La adecuada fiscalización sobre la utilización del dinero público resulta de vital importancia para mantener la confianza del ciudadano en el Gobierno y para el sostenimiento de una democracia saludable. Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005, (1994); Mar-Mol Co. Inc. v. A.S.G., 126 D.P.R. 864, 871 (1990).
Finalmente, la jurisprudencia ha sido enfática en cuanto a que el propósito primordial de una subasta es que el Gobierno obtenga los mejores servicios al mejor precio posible, protegiendo de este modo al erario. En cumplimiento con dicho propósito, de ordinario, el licitador más bajo debe ser considerado para realizar la obra, siempre y cuando cumpla con los requisitos reglamentarios de la agencia y tenga la capacidad de realizar la obra de forma eficiente. Tal determinación es una discrecional de la agencia, ya que es ésta la que cuenta con los conocimientos técnicos especializados para decidir qué oferta es la más conveniente. La agencia llega a su decisión tomando en consideración los factores esgrimidos tanto por la Ley como por su Reglamento de Subasta. Por ello, para invalidar una determinación de esta naturaleza es necesario que quien la impugne demuestre que la misma se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe. Empresas Toledo, Inc. v. Junta de Revisión y Apelación de Subasta de la Autoridad de Edificios Públicos y Autoridad de Edificios Públicos, 2006 JTS 147.
IV
En su primer señalamiento, la recurrente alega que la Junta erró al no adjudicarle la subasta de autos. Aduce que fue el único licitador que sometió una propuesta integrada por la totalidad (externos e internos) de los espacios publicitarios. Además, arguye que fue el licitador más alto al cotizar el pago de $25,000 mensuales por la publicidad de todas las localidades y $25,000 en intercambios. Asimismo, señala que el contenido de los anuncios sería de su exclusiva determinación, pero ofreció espacio para las campañas del Municipio libre de costos dos veces al año.
AA aclara también que nunca señaló que no estaba dispuesta a incrementar el pago por arrendamiento, en referencia a lo que señalaron las recurridas en sus respectivas posturas. Por último, reclama que fue objeto de trato desigual y parcialidad.
Analizados dichos planteamientos al tenor del récord ante nos, determinamos que los mismos no están sostenidos por la prueba.
Distinto a lo alegado por la recurrente, no surge del expediente que la propuesta a ser sometida por los licitadores tuviera que ser integrada o conjunta. En lugar alguno de la solicitud de propuestas surge tal requisito. *805 Al contrario, de ésta se desprende la potestad de la Junta de adjudicar un renglón o renglones a más de un licitador, lo que presupone también la posibilidad de que éstos sometan propuestas separadas para uno o más de los renglones de publicidad (externa e interna), como, en efecto, hicieron las recurridas.
De otro lado, la recurrente no ha demostrado que la Junta hubiese tomado una decisión arbitraria o caprichosa al adjudicar la propuesta a las recurridas. En el Aviso de Adjudicación, la Junta estableció que las propuestas de los recurridos le garantizaban al Municipio un ingreso mínimo de $27,317. mensuales, cantidad mayor a la ofrecida por AA. De otro lado, las recurridas reconocieron “que su oferta podría ser aumentada en la medida que se disponga de facilidades adicionales que no hayan sido contempladas en esta Solicitud de Propuestas”. 
Otro aspecto tomado en consideración por la Junta al evaluar las propuestas de las partes fue que AA sujetó el contenido de sus anuncios a su entera y exclusiva discreción. Por el contrario, las propuestas de las recurridas reconocen la facultad del Municipio de objetar ciertos tipos de propaganda.
Finalmente, no hemos encontrado en el récord ante nos que el Municipio haya tratado a AA en forma parcializada. Del récord ante nos se desprende que la propuesta sometida por la recurrente fue objeto de un cuidadoso y pormenorizado análisis por la Junta y el Comité Evaluador de Secretaría Municipal. Además, refleja que la adjudicación de la solicitud de propuestas fue el resultado de un proceso ponderado que analizó objetivamente las propuestas de AA, Outdoor y Up & Down.
No se cometió el primer error apuntado.
En su segundo error, AA reclama que la Junta no cumplió o siguió su Reglamento y las especificaciones de la Invitación y Pliegos de la Subasta. Para sustentar su posición, AA alega que no se incluyó la ordenanza que autorizó al Municipio a arrendar los espacios de publicidad.
De otro lado, expone que la Junta incumplió el inciso 11.3 del Artículo XI del Reglamento que dispone que “[e]n caso de que el Municipio sea el vendedor o arrendador en la subasta, la recomendación de adjudicación se hará al postor más alto 
Es la posición de la recurrente que Outdoor y Up & Down no sometieron individualmente la licitación más alta. Aduce que AA fue el postor que sometió la licitación más alta, por lo que conforme al Reglamento se le debió adjudicar la publicidad del Municipio de San Juan.
Finalmente, arguye que la solicitud de propuestas no advertía que se podía licitar por publicidad externa o interna, por lo que Outdoor y Up & Down tenían que haber presentado enmiendas alternas. Entiende AA que al no habérsele requerido a las recurridas someter enmiendas alternas, recibieron un trato preferente en detrimento de la recurrente.
Evaluados los aludidos planteamientos al tenor del récord ante nos, concluimos que la Junta no incurrió en el segundo error apuntado.
Notamos del Apéndice sometido por AA el 7 de noviembre de 2006, que el mismo incluye copia de la Resolución Núm. 90 serie 2003-2004 aprobada el 24 de febrero de 2004 por la Asamblea Municipal de San Juan. Por medio de ésta, la legislatura municipal autorizó, al Municipio, a través de su Alcalde, a llevar a cabo un proceso de solicitud de propuestas a los fines de arrendar espacios para ubicar la publicidad gráfica en las facilidades y propiedades del Municipio. En consecuencia, no tiene razón la recurrente al cuestionar la autoridad del Municipio para llevar a cabo la solicitud de propuestas para publicidad.
*806 Por otra parte, tampoco tiene razón AA al argüir que la Junta incumplió el inciso 11.3 del Reglamento. Según se desprende del Aviso de Adjudicación, la Junta ejerció su discreción al seleccionar a los licitadores Outdoor y Up & Down como los agraciados en la publicidad por considerar que tales propuestas, en conjunto, proveerían mayor ingreso al Municipio que la licitación integrada de AA. Además, la Junta hizo constar en dicho Aviso que la oferta de las recurridas podría aumentar en la medida en que el Municipio dispusiera de facilidades adicionales, lo que sin duda brindaría más ingreso al Municipio.
Por otro lado, la solicitud de propuestas le hizo claro a los licitadores que la Junta podía adjudicar la publicidad a un postor que no necesariamente fuese el más alto, provisto que ello beneficiase al interés público. Por último, alertó a los licitadores que cuando el interés público se beneficie con ello, la Junta podrá adjudicar un renglón o renglones a más de un licitador.
El récord administrativo refleja que la Junta se adhirió a los postulados de su Reglamento por lo que el segundo error señalado tampoco fue cometido.
De conformidad con el análisis que antecede, concluimos que la recurrente no demostró que la adjudicación de la solicitud de propuestas para la publicidad del Municipio fue tomada de forma arbitraria, caprichosa o mediante fraude. Por ello, procede confirmar el Aviso de Adjudicación impugnado.
y
Por los fundamentos expuestos, se confirma el Aviso de Adjudicación emitido por la Junta de Subastas del Municipio de San Juan el 28 de agosto de 2006 y notificado el 31 de igual mes y año.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 21
1. Apéndice del recurso, pág. 19.

2. Id.

3. Apéndice del recurso, pág. 41.
4. Apéndice del recurso, pág. 25.
5. Art. XI, inciso 11.3 del Reglamento de la Junta de Subasta del Municipio de San Juan; Apéndice del recurso, pág. 64.
6. Véase Apéndice del recurso, págs. 455-458.