# 2008 DTA 116

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

COMFORT SYSTEMS USA, PUERTO RICO, INC.
Recurrente

v.

JUNTA DE SUBASTAS DE MEJORAS PERMANENTES, UNIVERSIDAD DE PUERTO RICO
Recurrida

Núm. KLRA-2008-00813

San Juan, Puerto Rico, a 19 de septiembre de 2008

Panel integrado por su Presidenta, la Juez Bajandas Vélez
y los Jueces Aponte Hernández y Cortés Trigo

Cortés Trigo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente Comfort Systems USA, Puerto Rico, Inc. (Comfort) solicita la revisión de la Resolución de la Junta de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico (Junta de Subastas) de 1 de julio de 2008, notificada el 2 de julio de 2008. Mediante la misma, la Junta de Subastas adjudicó a Comas & Comas Contractors Corp. (Comas) el proyecto de remodelación y restauración del interior del Edificio Luis de Celis (Proyecto). Confirmamos.

**I**

Mediante anuncio publicado el 10 de junio de 2007, la Universidad de Puerto Rico (UPR) inició el proceso de la subasta núm. JSMP 07-025 (Subasta) para el Proyecto. El Edificio Luis de Celis (Edificio) está localizado en el Recinto Universitario de Mayagüez de la UPR (RUM) y fue diseñado por el Arq. Rafael Carmoega en el año 1936.

En el Anuncio de la Subasta (Aviso de Subasta) se indicó que el Proyecto incluía la actualización de los sistemas eléctricos y mecánicos, cumpliendo con los códigos vigentes aplicables, y su integración fluida con la arquitectura del Edificio y se contemplaban demoliciones parciales, remoción de mobiliario fijo, paredes, plafones y terminaciones de piso en mal estado. Además, se expresó que el Proyecto incluía, entre otros trabajos, la rehabilitación de puertas y ventanas, la modernización del ascensor y la restauración de elementos históricos, tales como terminaciones, molduras y detalles arquitectónicos.

Como parte del proceso, se celebraron dos reuniones presubasta y se emitieron once *"Addendums"*. A la primera reunión celebrada el 22 de junio de 2007 comparecieron varios licitadores, incluyendo la recurrente, la cual en ese momento operaba bajo el nombre comercial de James Air Conditioning.

En dicha reunión, el Arq. Enrique Figueroa Hernández de EFH Arquitectos, quien está a cargo del diseño del Proyecto, explicó el alcance del Proyecto. El Arq. Figueroa indicó que las áreas públicas interiores del

Edificio -su interior, los pasillos, las escaleras y las entradas-, se mantendrían lo más fiel al diseño original del Edificio. También informó que la remodelación requería, en algunos casos, restaurar a su condición o estado original y, en otros, el reemplazo de elementos perdidos que había que replicar.

Por su parte, el Ing. Héctor M. Babilonia de Babilonia Engineering Group, la cual está a cargo del diseño mecánico del Proyecto, explicó el alcance de los trabajos mecánicos, eléctricos y de plomería. Recalcó la importancia de considerar que era un proyecto de remodelación en un edificio de 1936 y no era deseable intervenir la estructura. Informó que la parte central del Edificio es la que tiene la arquitectura original.

Además, se informó que, en cuanto al manejo administrativo de la adjudicación y contratación del Proyecto, las Oficinas de Edificio y Terrenos del RUM y la Oficina de Desarrollo Físico e Infraestructura de la Administración Central de la UPR (ODFI) someterían su recomendación técnica sobre las propuestas recibidas en la apertura de la Subasta y la Junta de Subastas decidiría la adjudicación.

La segunda reunión presubasta se celebró el 6 de julio de 2007. En la misma se aclararon varias dudas sobre detalles de las especificaciones.

La apertura de las licitaciones se llevó a cabo el 29 de febrero de 2008. La Junta de Subastas recibió las siguientes tres propuestas para la Subasta: (1) Comfort licitó un *"Lump Sum"* de $4,825,000 más un *"Allowance A"* de $20,000, para un total de $4,845,000; (2) Comas licitó un *"Lump Sum"* de $4,895,000 más un *"Allowance A"* de $20,000, para un total de $4,915,000; y (3) E. Montalvo Silva Construcciones, Inc., licitó un *"Lump Sum"* de $5,453,000 más un *"Allowance A"* de $20,000 para un total de $5,453,000.

El 12 de junio de 2008, la Junta de Subasta, luego de considerar las recomendaciones de la ODFI, emitió Aviso de Adjudicación de Subasta adjudicando la Subasta a Comas (Aviso de Adjudicación). A estos fines indicó que:

*"Comas y Comas Contractors Corp. cumple con las especificaciones, términos y condiciones técnicas establecidos en los pliegos de subasta. Además, comparado con el postor más bajo, posee mayor capacidad y recursos en el desarrollo de proyectos similares o asociados a la naturaleza, complejidad y escala de obras de remodelación de edificios históricos, tales como Luis de Celis. Cumple con los parámetros reglamentarios de experiencia y ejecución satisfactoria de trabajos similares al de la subasta durante los últimos tres años."*

Además, la Junta de Subastas, al rechazar la propuesta de Comfort, expresó lo siguiente:

*"La oferta de Comfort Systems USA Puerto Rico, Inc. (antes, James Air Conditioning Enterprise, Inc.) menor postor, cumple con los términos, condiciones y requerimientos técnicos establecidos para la subasta, pero no se favorece porque posee menor capacidad y experiencia en proyectos de remodelación similares al subastado, durante los últimos tres años. La ejecución de Comfort Systems USA Puerto Rico, Inc. en proyectos similares en complejidad, especialidad y escala al propuesto es limitada, lo cual no resulta conveniente para el adecuado desarrollo de obras de remodelación de edificios históricos, tales como Luis de Celis."*

El 23 de junio de 2008, la recurrente presentó petición de reconsideración ante la Junta de Subastas. El 1 de julio de 2008, el Panel de Reconsideración Número 1 de la Junta de Subastas (Panel de Reconsideración) emitió Resolución declarando no ha lugar la solicitud de reconsideración, la cual fue notificada el 2 de julio de 2008.

Inconforme, recurre Comfort. Sostiene que se cometieron los siguientes errores:

*"1) Erró el Panel de Reconsideración Número 1 al no revocar la adjudicación de la Junta de Subastas aun cuando el aviso de adjudicación es insuficiente y nulo lo cual vulnera el principio constitucional del debido*

*proceso de Ley.*

*2) Erró el Panel de Reconsideración Número 1 al no determinar que la adjudicación de la Subasta fue realizada de manera arbitraria y al no estar sostenida con evidencia sustancial según lo requerido por la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2101 et seq.*

*3) Erró el Panel de Reconsideración Número 1 al no realizar Determinaciones de Hechos en su escrito de Resolución, dado que esto vulnera la función revisora del Tribunal de Apelaciones."*

La Junta de Subastas presentó su alegato. Resolvemos.

## II

Es norma establecida que a toda determinación administrativa le cobija una presunción de regularidad y corrección. La revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. *Otero v. Toyota,* 163 D.P.R. 716, 727 (2005); *Mun. de San Juan v. J.C.A.,* 149 D.P.R. 263, 280 (1999).

La presunción de corrección que tiene una decisión administrativa debe sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de prueba en contrario que obre en el expediente administrativo. *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1989); *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699-700 (1975). Lo anterior obedece a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Rivera Concepción v. A.R.P.E.,* 152 D.P.R. 116, 123-124 (2000).

Al evaluar un recurso de revisión judicial de una determinación administrativa, el tribunal analizará, conforme al expediente administrativo, si: (1) el remedio concedido fue razonable; (2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y (3) las conclusiones de derecho son correctas. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999); *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 129 (1998); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da Ed., Bogotá, Forum, 2001, pág. 534.

La función revisora del tribunal, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.,* 146 D.P.R., a la pág. 129.

Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2101 y ss. *"Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."* Sec. 4.5 de la LPAU, 3 L.P.R.A. sec. 2175. Sin embargo, *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal."* Id.

El criterio rector en la revisión judicial de una determinación de hecho de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como *"aquella evidencia pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión."* *Ramírez v. Depto. de Salud,* 147 D.P.R. 901, 905 (1999). De ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. *Pacheco v. Estancias,* 160 D.P.R. 409, 432 (2003). Dicho análisis requiere que la evidencia sea considerada en su totalidad; esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 437 (1997). Esta norma persigue evitar que los

tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] ... no está justificada por una evaluación justa del peso de la prueba."* Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Véase, *Ramírez v. Depto. de Salud*, 147 D.P.R., a las págs. 905-906.

Por otro lado, el propósito de exigir que las obras y la contratación que realiza el Gobierno se efectúen mediante el proceso de subasta es proteger los intereses y dineros del Pueblo. Este mecanismo sirve para promover la competencia, lograr los precios más bajos posibles, evita el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos y minimiza los riesgos de incumplimiento. *Cordero v. Municipio de Guánica,* 170 D.P.R. ___ (2007), **2007 J.T.S. 29,** a la pág. 862; *A.E. E. v. Maxon,* 163 D.P.R. 434, 439 (2004); *Mar-Mol Co., Inc. v. Adm. Servicios Gens.,* 126 D.P.R. 864, 871 (1990).

En Puerto Rico no existe legislación especial dirigida a regular los procesos de subastas de las agencias, por lo que éstas tienen la obligación de adoptar reglamentación para guiar dichos procedimientos delimitando el alcance de su discreción. Según lo establece la Sección 3.19 de la L.P.A.U., 3 L.P.R.A. sec. 2169, *"[l]os procedimientos de adjudicación de subastas serán procedimientos informales; su reglamentación y términos serán establecidos por las agencias."* Conforme lo anterior, cada agencia, como entidad con el conocimiento especializado, tiene discreción para aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus subastas. *L.P.C. & D., Inc. v. A.C.,* 149 D.P.R. 869, 875 (1999).

De conformidad con lo anterior, la Ley de la Universidad de Puerto Rico, Ley Núm. 1 de 20 de enero de 1966, según enmendada, 18 L.P.R.A. secs. 601 y ss., delegó a la UPR la facultad para establecer los parámetros conforme los cuales deben regirse las subastas que celebre. Art. 3 (e) (5), 18 L.P.R.A. sec. 602 (e) (5). A estos fines, el 30 de agosto de 2003, la UPR aprobó el Reglamento de Subastas de Mejoras Permanentes de la Universidad de Puerto Rico, Certificación Núm. 20 (2003-2004) de la Junta de Síndicos (Reglamento), para establecer las normas que regirán los procesos de subastas para realizar mejoras permanentes en la UPR. En el Artículo XV B. y C. del Reglamento se dispone:

*"B. La Junta de Subastas, mediante comunicación firmada por su Presidente, notificará por escrito el resultado de la subasta a todos los otros licitadores.... Dicha comunicación contendrá un informe breve de los fundamentos para la adjudicación, así como la lista de los nombres y direcciones de los licitadores.*

*C. Las comunicaciones dirigidas tanto al licitador agraciado, como a todos los otros licitadores que participaron en la subasta, deberá advertirles de su derecho a solicitar de la Junta de Subastas la reconsideración de la adjudicación, de conformidad con lo establecido en el Artículo XVI de este Reglamento."*

Además, en el Artículo XVI del Reglamento se establece el procedimiento para solicitar reconsideración de las decisiones de la Junta de Subastas.

De otra parte, se ha establecido que, a pesar del carácter informal *sui generis* de los procedimientos de subasta, éstos tienen ciertas características adjudicativas, por lo cual la parte adversamente afectada por una

determinación puede ejercer el derecho a solicitar revisión judicial garantizado en la LPAU. *Velázquez v. Adm. de Terrenos*, 153 D.P.R. 548, 555-556 (2001). Por lo tanto, es imprescindible que la agencia informe los fundamentos sobre los que descansa su determinación, de modo que el foro judicial pueda ejercer apropiadamente su función revisora. *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 D.P.R. 733, 741 (2001).

Según lo anterior, la resolución de la agencia en la cual se notifica la adjudicación de una subasta debe incluir, por lo menos, lo siguiente: (1) los nombres de los licitadores en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos; y (4) la disponibilidad y el plazo para solicitar reconsideración y la revisión judicial. *L.P.C. & D., Inc. v. A.C.,* 149 D.P.R., a la pág. 879.

### III

Debido a que los señalamientos de error números uno y tres están íntimamente relacionados, los discutiremos en conjunto. En éstos, Comfort alega que el Aviso de Adjudicación *"no cumple con los requisitos esenciales mínimos de estar fundamentados al menos de manera sumaria y sucinta"* de forma que pudiera conocer los fundamentos para la adjudicación de la Subasta. Además, alega que debieron realizarse determinaciones de hechos como parte de la evaluación de su solicitud de reconsideración. No tiene razón.

Como hemos indicado, siendo la adjudicación de una subasta un proceso informal, sólo se requiere que se exponga una explicación de las bases sobre las que descansa la decisión, es decir, fundamentar la decisión de forma breve, sumaria o sucinta. *L.P.C. & D. Inc. v. Autoridad de Carreteras*, 149 D.P.R., a la pág. 879.

En el presente caso, el Aviso de Adjudicación contiene el nombre de los tres licitadores que participaron en la Subasta, sus direcciones y ofertas y el nombre del licitador agraciado. También, incluye los factores o criterios tomados en consideración para adjudicar la Subasta al postor escogido y para no favorecer las propuestas de los licitadores perdidosos y las advertencias sobre el derecho a solicitar reconsideración de la adjudicación en los términos expresos del Artículo XVI del Reglamento.

En cuanto a los criterios considerados para la adjudicación, se indicó que se evaluaron las propuestas recibidas y las recomendaciones de la ODFI y, a base de ello, se determinó que el licitador agraciado cumplía con las especificaciones, términos y condiciones técnicas establecidas en los pliegos de la Subasta. Además, se expresó que, comparado con el postor más bajo, el licitador seleccionado poseía mayor capacidad y recursos en el desarrollo de proyectos similares o asociados a la naturaleza, complejidad y escala de obras de remodelación de edificios históricos como el Edificio. Y se señaló que el licitador escogido cumplía con los parámetros reglamentarios de experiencia y ejecución satisfactoria de trabajos similares al de la Subasta, durante los últimos tres años.

Por otra parte, se detallaron los defectos de los dos licitadores no seleccionados. Sobre Comfort se indicó que poseía menor capacidad y experiencia en proyectos de remodelación similares al subastado durante los últimos tres años. Ese fue el criterio decisivo para no adjudicarle la Subasta.

En resumen, la Junta de Subastas expresó de forma sucinta, pero específica, los fundamentos para su decisión de forma tal que permitió a los licitadores no agraciados conocer los fundamentos de su decisión. Conforme lo anterior, la Junta de Subastas cumplió con el Artículo XV B. y C. del Reglamento y los requisitos establecidos por el Tribunal Supremo de Puerto Rico para adjudicar una subasta. *Pta. Arenas Concrete, Inc. v. J. Subastas,* 153 D.P.R., a la pág. 741; *L.P.C. & D., Inc. v. A.C.,* 149 D.P.R., a la pág. 879.

Comfort plantea, además, que el Panel de Reconsideración violó su derecho al debido proceso de ley y a que la decisión de la Junta de Subastas pudiera ser debidamente revisada por este Tribunal, al no hacer determinaciones de hechos.

El Artículo XVI del Reglamento dispone que el Panel de Reconsideración de la Junta de Subastas que resuelva una solicitud de reconsideración puede simplemente rechazarla o no acogerla al no emitir Resolución alguna. Así lo dispone igualmente la Sección 3.19 de la LPAU, según enmendada, 3 L.P.R.A. sec. 2169, al establecer:

*"La parte adversamente afectada por una decisión podrá...presentar una moción de reconsideración ante la agencia o la entidad apelativa de subastas.... Si la agencia o la entidad apelativa dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial."*

En este caso, la decisión del Panel de Reconsideración fue declarar no ha lugar la solicitud de reconsideración de Comfort, esto es, la rechazó de plano. Ello está autorizado expresamente por el Artículo XVI del Reglamento y la citada Sección 3.19 de la LPAU.

Conforme lo anterior, Comfort no ha establecido que se ha afectado su derecho a cuestionar la determinación de la Junta de Subastas. En su solicitud de reconsideración ante la Junta de Subastas y en el presente recurso de revisión judicial ha formulado sus argumentos sobre los méritos de la adjudicación de la Subasta. Más aún, los fundamentos para dicha adjudicación expresados por la Junta de Subastas en el Aviso de Adjudicación son suficientes para, como anteriormente discutimos, determinar que la decisión no fue una arbitraria, caprichosa o irrazonable. Véase, *L.P.C. & D. v. Autoridad de Carreteras*, 149 D.P.R., a la pág. 879. Por lo tanto, el Aviso de Adjudicación es válido y suficiente en derecho y los errores planteados no fueron cometidos.

Por último, Comfort sostiene en su segundo señalamiento de error que la decisión de la Junta de Subastas de no adjudicarle la Subasta no está sostenida por el expediente, por lo que es irrazonable, arbitraria y caprichosa. Además, alega que la Junta adjudicó la subasta a un postor más alto y dio peso a factores desconocidos por los licitadores, como el concepto de edificio histórico y tener experiencia en remodelación similares de edificios por los últimos tres años. Tampoco tiene razón.

En las Instrucciones a los licitadores, las cuales forman parte de los pliegos de la Subasta, específicamente se indicó que la misma estaría regida por el Reglamento. Apéndice de la parte recurrente, pág. 6. A su vez, el Artículo XIII D. del Reglamento dispone:

*"D. La Junta velará porque los licitadores que reciban la buena pro de la subasta sean personas naturales o jurídicas: (1) de sólida solvencia moral y económica, según se refleje en la presentación de los estados financieros, (2) que posean la experiencia y capacidad necesaria, en proyectos similares al de la subasta durante los últimos tres años, (3) que tengan vigentes las licencias, permisos o franquicias necesarias y requeridas por las leyes y reglamentos aplicables, y (4) que hayan cumplido a cabalidad con la Universidad de Puerto Rico en otros proyectos de esta institución."*

Conforme lo expuesto, claramente era requisito de la Subasta que el licitador agraciado poseyera experiencia y capacidad en proyectos similares, es decir, en proyectos de restauración y remodelación de edificios de la naturaleza del Edificio durante los últimos tres años. Por lo tanto, los licitadores conocían que uno de los criterios que la Junta de Subastas consideraría era que poseyeran la experiencia y capacidad necesaria en proyectos similares al de la Subasta durante los últimos tres años.

Comfort alega que en los documentos provistos por la Junta de Subastas no surge el requisito de tener experiencia en edificios históricos y que el Edificio no es un edificio histórico conforme al Registro Nacional de Monumentos Históricos.

El hecho de que el Edificio no figure como edificio histórico en el Registro Nacional de Monumentos Históricos, no es fundamento para revocar la adjudicación de la Subasta. Se trata de la restauración de un edificio construido en el 1936 sobre el cual la UPR ha demostrado particular interés en que recupere su estado original.

Como hemos indicado, lo anterior fue notificado a los licitadores. En el Aviso de Subasta se informó que el Proyecto contemplaba la restauración de elementos históricos, tales como terminaciones, molduras y detalles arquitectónicos. Además, en la reunión presubasta de 22 de junio de 2007 se explicó a los licitadores que las áreas públicas interiores del Edificio -su interior, los pasillos, las escaleras y las entradas-, se mantendrían lo más fiel al diseño original del Edificio. También se indicó que la remodelación requería en algunos casos restaurar a su condición o estado original y en otros el reemplazo de elementos perdidos que había que replicar.

En síntesis, durante todo el proceso previo a la adjudicación, los licitadores estuvieron debidamente advertidos de la naturaleza particular del Edificio, considerado por la UPR como uno de alto valor histórico. Por ende, lo relevante no era si el Edificio estaba inscrito en el Registro Nacional de Monumentos Históricos como un monumento histórico, sino que es un edificio antiguo que requiere que quien realice las obras incluidas en el Proyecto tenga la experiencia necesaria para efectuar adecuadamente los trabajos de restauración.

De todos modos, de un examen del expediente administrativo surge que Comfort no cumple con los requisitos exigidos para llevar a cabo la remodelación del Edificio. En su recomendación a la Junta de Subastas de 14 de mayo de 2008, la ODFI señaló que los proyectos similares realizados y dados como referencia por Comfort resultaron ser insuficientes debido a que el 90% se relacionaban específicamente con proyectos de instalación de sistemas de acondicionadores de aire y no de restauración de edificios completos tanto comparables en inversión como en magnitud de la obra. Más importante aún, las referencias de los pocos proyectos similares fueron negativas. Por el contrario, las referencias del licitador agraciado fueron sobre proyectos similares en cuanto a construcción, magnitud de la obra y las mismas fueron favorables. Apéndice de la recurrida, págs. 179-180.

Conforme lo anterior, la totalidad del expediente demuestra que Comfort no cumplió con un requisito de la Subasta que la Junta de Subastas consideró sustancial y de mayor importancia que el hecho de haber sido el postor económico más bajo: la experiencia y capacidad probada en proyectos de similar naturaleza. Según ha establecido el Tribunal Supremo, las agencias pueden adjudicar la subasta al postor que consideren más apropiado, aun cuando no sea el más bajo, si con ello se sirve el interés público. En ausencia de fraude, mala fe, o abuso de discreción, ningún participante tiene derecho a quejarse cuando otra propuesta es escogida, ya que ningún postor tiene derechos adquiridos en una subasta. *Empresas Toledo v. Junta*, 168 D.P.R. ___ (2006), **2006 J.T.S. 147**, a la pág. 139.

En resumen, la determinación de la Junta de Subastas de adjudicar la Subasta al licitador que cumplió con todos los requisitos y especificaciones de la subasta, aun cuando hubiese un postor menor, está fundamentada en evidencia sustancial en la totalidad del expediente administrativo. Además, responde a un interés legítimo, por lo que no es arbitraria ni caprichosa. Por el contrario, está dirigida a cumplir con la reglamentación de la Junta de Subastas y velar porque la remodelación del edificio se lleve a cabo exitosamente, de forma que propenda a obtener el mejor y mayor interés institucional de preservar el valor histórico de una de sus preciadas edificaciones. En estas circunstancias, no estamos en posición de sustituir el criterio de la agencia, por lo que no intervenimos con la apreciación de la Junta de Subastas. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70, 75 (2000); *Domínguez v. Caguas Expressway Motors,* 148 D.P.R. 387, 397-398 (1999).

## IV

Por los fundamentos expuestos, se dicta sentencia confirmando la decisión recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones